**In the Matter of KIMBERLING INN RESORT AND VACATION CLUB, Interval Marketing Consultants, Inc., and Kimberling Inn, Inc., Debtor.**

**Bankruptcy No. 80–00918–SW–11.**

United States Bankruptcy Court,
W. D. Missouri,
Southwestern Division.

Aug. 28, 1981.

**5.** See note 4, *supra.*

Steven C. Block, Independence, Mo., for debtor.

ORDER GRANTING THE APPLICATION OF THE ACCOUNTING FIRM OF MOORE AND ZUERCHER, P.C., FOR AN AWARD OF ACCOUNTANT'S FEES IN THE SUM OF $3,500.00

DENNIS J. STEWART, Bankruptcy Judge.

The accounting firm of Moore and Zuercher, P.C., has applied for an award of fees for accounting services rendered to the debtors during the course of the prior chapter 11 proceedings consumed in prosecution of an unsuccessful plan of reorganization. In its prior orders addressed to this subject, it was necessary for the court to question whether any or all of the services for which compensation was sought were within the compass of the court's initial order granting the debtors authority to incur accounting expenses.[1]

After the retention of counsel, the accounting firm has now supplied the court

**1.** The court previously issued its order on March 26, 1981, directing the applicant accounting firm to show cause why compensa-

with a detailed statement of services which, although it seems to have little point of contact with the statement first submitted, is more intelligible in terms of the authorizing order.[2] The paramount consideration in determining the reasonableness of the fees

tion should not be denied, therein citing the following considerations:

"On August 24, 1980, at the request of the counsel for the debtors, this court entered its order authorizing the accounting firm of Moore and Zuercher 'to verify and correct, if necessary, the closing of the debtor's books as of the filing of this case, and to analyze the continuation of the new books thereafter'; 'to prepare the periodic statements of the debtor in possession's operations as required by the rules of this court, including profit and loss and financial statements requested by the creditors' committee'; and 'to prepare and file debtor's income tax returns for the fiscal years which ended prior to the filing of this case.'

"Now, under the date of March 9, 1981, the accounting firm has filed a very general request for an award of $5,888.60 'for the months November, December 1980 and January 1981.' In that request, they appear to request fees for certain functions which were not within the initial grant of authority, as above quoted, by this court. Thus, some $528.00 is requested for 'attendance at board meeting and other meetings, periodic consultation and advice'; $105.00 for 'meeting with B. Olsen and K. Babbit, computation of interest due Thomas and letter regarding least expensive method to complete analysis and correction of 1979 accounting records; assisting client with analysis and correction of 1979 accounting records'; $87 for 'meeting, consultation and advice with K. Babbit regarding information requested by bankruptcy court; analysis and preparation of letter regarding cash balances for bankruptcy court;' $315.00 for 'preparation of 1979 financial statements'; and $916.10 for 'meetings, consultation and advice regarding payroll records, fourth quarter payroll tax returns and 1980 earnings records; preparation of fourth quarter payroll tax returns and 1980 earnings records and reconciliation of same to prior 1980 payroll tax returns, general ledger and earnings records.' Without more, there is nothing to tie these requests to the above quoted authorization of the court of August 24, 1980, for the debtor to incur certain specified accounting expenses...

"Further, even if it should be found that the above and foregoing services were rendered in accordance with the court's order of August 24, 1980, the court is to award compensation only in consideration of 'the time, the nature, the extent, and the value of the services ...' See section 330 of the Bankruptcy Code. The application is presented in such sketchiness that, as it now exists, it would not be possible for the court to assess the nature of the services rendered, their extent, and the quality in terms of the skill required to render them. Rule 215 of the Rules of Bankruptcy Procedure requires a more detailed statement than has here been filed by the applicants so that the court can tell precisely what was done, by whom, and on what dates and for what time period. Something should also be said, with respect to each task, respecting how it was necessary to be done and why it could only be done by the applicant accounting firm."

2. The categories of tasks for which compensation was sought in the initial application filed by the accounting firm were as follows:

"Attendance at Board Meeting and other meetings, periodic consultation and advice.

"Meeting with B. Olsen and K. Babbit, computation of interest due Thomas and letter regarding same to K. Babbit.

"Meetings with client, consultation and advice regarding least expensive method to complete analysis and correction of 1979 accounting records. Assisting client with analysis and correction of 1979 accounting records.

"Meeting, consultation and advice with K. Babbitt regarding information requested by bankruptcy court. Analysis and preparation of letter regarding cash balances for bankruptcy court.

"Preparation of 1979 U.S. and Missouri income tax returns.

"Preparation of 1979 financial statements.

"Preparation of and consultation and advice regarding monthly reports for the bankruptcy court (months of October, November, & December, 1980).

"Meetings with client, consultation and advice regarding completion of analysis of 1980 accounting records and preparation for processing of this information. Processing of 1980 accounting information. Preparation of 1980 financial statements.

"Meetings, consultation and advice regarding payroll records, fourth quarter payroll tax returns and 1980 earnings records. Preparation of fourth quarter payroll tax returns and 1980 earnings records and reconciliation of same to prior 1980 payroll tax returns, general ledger and earnings records."

In the current application, on the other hand, the following are the services for which compensation is sought:

"... detailed analysis of Debtor's books as of filing of the Petition ...

"That the lack of structure in Debtor's books and records necessitated several meetings

is that of the results achieved or the benefit conferred upon the chapter 11 estate.[3] Although the court does not at all question that the services described in the revised application were actually rendered and that some skill was required for their rendition, it appears that not all of the services resulted in any appreciable benefit for the debtors. The service most consistently performed by the accounting firm (although it does not clearly appear to have been authorized by the court[4]) was that of supplying the monthly operating reports to the court as required by Rule 8(F) of the Local Rules of Bankruptcy Procedure. But, as the court has previously pointed out, the monthly reports thus filed were not verified and did not purport accurately to reflect the operations of the debtor.[5] As became clear when the court at length conducted its hearing on the issue of dismissal or conversion on April 24, 1981, the accounting for monthly operations would have been better accomplished, in compliance with the letter and spirit of the local rule, if the reporting had been done by an officer of the debtors having personal knowledge of the transactions reported. The system whereby an accountant was used, who disclaimed any accuracy for his reports, only obfuscated matters and worked to delay the proper course of these proceedings and to prejudice the rights of creditors. In substance, by this device, the entire course of the chapter 11 proceedings under the prior unsuccessful plan was converted into a continuous quest by the court for accurate information respecting the operations and finances of the debtor.

Further, charges are made for computing certain sums of interest due to the secured creditors under the former plan of reorganization. The files and records in this case show that these computations had ultimately to be made by the court in its written orders issued on December 29, 1980, and January 9, 1981. It cannot be considered, therefore, that any appreciable benefit was conferred upon the chapter estate in this respect.

The court remains troubled by the absence of any specific showing of benefit for the estate in the detailed statement as a result of the other duties for which compensation is sought. But it is perhaps presumable that the general accounting functions and the preparation of totals for income tax purposes, without more, are functions having considerable value to the estate.

Accordingly, for the foregoing reasons, it is therefore

ORDERED that the application of Moore and Zuercher, P.C., for an award of accountants' fees be, and it is hereby, granted in the sum of $3,500.00.

---

with the Board of Debtor in full and numerous other meetings with K. Babbitt ... "... worked with employees of Debtor relating to payroll records and returns..."

**3.** See 2 Collier on Bankruptcy ¶ 330–05(d) at 330–15 (1980), to the following effect: "The tangible benefit conferred on the estate and its creditors is clearly a proper measure of the appropriate compensation."

**4.** See note 1, *supra.* Further, it appears that, under the requirements of Local Rule 8(F), it would have been better for someone who had personal knowledge of the operations of the debtor to verify the monthly operating statement rather than for the accounting firm to prepare it and then disclaim any knowledge of its accuracy.

**5.** It was primarily this defect in the proceedings which preceded conditional confirmation of the amended plan of reorganization on May 5, 1981, that prompted the court to consider *sua sponte* dismissal or conversion of these chapter 11 proceedings to straight liquidation proceedings under chapter 7.