**In re INTERNATIONAL COINS & CURRENCY, INC., Debtor.**

**Bankruptcy No. 81–00023.**

United States Bankruptcy Court, D. Vermont.

June 23, 1982.

Joseph B. Garb, partner of Alexander Grant and Co., R. Marshall Witten, Chairman of the Creditors' Committee, and for SIMA. William J. Lowy, of Stroock, Stroock & Lavan, and Roy H. Carlin, of Reaves & McGrath, New York City, and Peter B. Brittin, Montpelier, Vt., for Debtor.

Joseph C. Palmisano, Barre, Vt., for the Chittenden Trust Co.

MEMORANDUM AND ORDER ON APPLICATION OF ACCOUNTANTS, ALEXANDER GRANT AND COMPANY, FOR COMPENSATION AND EXPENSES

CHARLES J. MARRO, Bankruptcy Judge.

On February 20, 1981 the Debtor filed an Application for an Order authorizing the retention of Alexander Grant and Company as accountants for the Debtor for the purpose of rendering certain accounting services, more particularly outlined in a letter from Joseph B. Garb, a partner of Alexander Grant to Roy Carlin, Esquire, as attorney for the debtor. This letter also recited

the cost of the accounting services as follows:

"Accountants | Rates (per hour)
---|---
Partners | $100–110
Manager-Consultants | $100
Manager-Audit | $65–85
Supervisors | $58
Heavy Seniors | $51
Light Seniors | $45
Heavy Assistants | $37
Light Assistants | $32"

Pursuant to this Application, the Court on February 20, 1981 entered an Ex Parte Order authorizing the employment of Alexander Grant and Company, as accountants for the Debtor "with compensation fixed at the hourly rates as recited in the letter dated February 18, 1981 hereto attached."

Subsequently, on June 15, 1981 the Debtor filed an Application to Amend the Order of Appointment entered February 20, 1981 which, in effect, requested that the Debtor be authorized to pay Alexander Grant for services rendered and out-of-pocket expenses necessarily incurred. Service of this Application was made on R. Marshall Witten, Esquire, Chairman of the Unsecured Creditors' Committee, and upon Joseph C. Palmisano, Esquire, attorney for Chittenden Trust Company. This Application was set for hearing which was held on July 2, 1981 at which time the Debtor submitted for filing a Schedule of the time and services rendered by Alexander Grant and Company as accountant for the period from February 27, 1981 through June 15, 1981. This Schedule did not contain the dollar amounts claimed for said services, but on January 5, 1982, Alexander Grant and Company filed a statement dated November 30, 1981 showing the balances due for services as follows:

"STATEMENT OF PRIOR MONTHS
BALANCES

Mar. 23, 1981 | # 03118 | $ 16,634.76
---|---|---
Apr. 23, 1981 | # 04149 | 31,675.97
May 19, 1981 | # 05153 | 43,629.41
June 23, 1981 | # 06153 | 18,739.53
July 29, 1981 | # 07170 | 10,113.11
Oct. 13, 1981 | # 10121 | 8,194.96
| | $128,987.74"

Sometime prior to the filing of the aforesaid statement dated November 30, 1981, Alexander Grant and Company, without approval or authorization from this Court, received from the Debtor $37,000.00 which presumably was paid on account of services rendered and it was only after this Court issued an Order to Show Cause directed against the Debtor and Alexander Grant and Company that the $37,000.00 paid was returned by Alexander Grant and Company to the Debtor.

A continued hearing on the Application of Alexander Grant and Company for compensation for services and expenses in the sum of $128,987.74 was held on April 5, 1982 with the following appearances, among others:

Joseph B. Garb, partner of Alexander Grant and Company;

R. Marshall Witten, Esquire, Chairman of the Creditors' Committee, and for SIMA;

William J. Lowy, Esquire, of Stroock, Stroock & Lavan, Esquires, and Roy H. Carlin, Esquire, of Reaves & McGrath, Esquires, and Peter B. Brittin, Esquire, for the Debtor;

Joseph C. Palmisano, Esquire, attorney for the Chittenden Trust Company.

The Committee of Unsecured Creditors through its Chairman, R. Marshall Witten, Esquire, objected to the allowance of the compensation requested by Alexander Grant and Company.

At the continued hearing, Alexander Grant and Company through the testimony of its partner, Joseph B. Garb, indicated that its claim to compensation was based on 1918 hours of accounting. However, the actual charges as shown in an amended statement filed June 22, 1982 are as follows:

SCHEDULE OF HOURS AND CHARGES

| Original Engagement Letter Tasks | Hours | Charges |
|---|---|---|
| A. Assistance in development of recordkeeping activities since February 9, 1981 | 58.5 | $ 5,175 |
| B. Assistance in preparation and review of financial statements as of February 9, 1981 | 857.5 | 46,008 |

| Original Engagement Letter Tasks | Hours | Charges |
|---|---|---|
| C. Assistance in tax matters | 46.0 | 3,086 |
| D. Assistance in preparation of forecasted financial statements | 33.5 | 3,435 |
| E. Consultation in reduction of scope of Data Processing services | 33.0 | 3,520 |
| F. Assistance in formulation of business plans, forecast and budgets concerning future operations | 111.0 | 9,875 |
| G. Review and evaluate management functions, financial record-keeping and reporting | 143.0 | 8,053 |
| H. Review and evaluate Company's internal control | 42.0 | 4,220 |
| I. Review financial statements and prepare 2/28 and 3/31 | 308.5 | 15,619 |
| J. Review and evaluate ongoing business operations and financial statements | 60.5 | 6,650 |
| L. Special accounts receivable systems work | 56.0 | 5,680 |
| M. Special work per 3/31/81 | 110.0 | 10,508 |
| | 1,859.5 | 121,829 |
| Expenses: | | |
| Air and auto | | 1,772 |
| Meals and lodging | | 3,829 |
| Report production and communications | | 2,058 |
| | 1,859.5 | $128,988 |

Of the charges for services 261 hours were at the partnership level with the rate at $100–110 per hour. The prevailing rate structured for accountants in this district area is within the range of $50.00 to $65.00 an hour with most of them charging about $50.00 an hour and for management time, $35.00 to $45.00 an hour. The accounting services of Alexander Grant & Company were surely of some benefit to the debtor. The company's recordkeeping was seriously deficient; it was in need of a program to control costs and to plan so that it could accomplish some of the goals it had set out for itself with 300 employees; it was unable to reconcile its cash position to such an extent that it had to call the bank continually to ascertain its balance. In sum, the affairs of the debtor were in a state of chaos when the applicant started rendering its services on February 16, 1981. It was in dire need of a restructuring of its accounting procedures and Alexander Grant & Company did in fact lend its efforts and

professional advice towards a solution of this problem. Yet, the Court is not convinced that all of the time charged and the results accomplished warrant the payment of the amount requested as a reasonable fee.

 The compensation of the applicant was fixed in the Order of Appointment at the hourly rates that they have charged for their services. However, the compensation of a professional person must still meet the test of reasonableness based upon the time, nature, extent and value of the services rendered, as well as the cost of comparable services, other than in a case under the Code. Section 330(a)(1) of the Bankruptcy Code; 2 Collier 15th Ed. 330–16 Sec. 330.-05(2). *Caster v. Woods* 3 B.C.D. 503, 433 F.Supp. 291. See also *In Re Garland Corporation* 8 B.R. 826, 829 (Bkrtcy.Mass.1980) where the Court said:

"Most important and controlling all other considerations, even prior Court approval of specific terms of compensation, is the duty of the Court to determine that all fees and allowances are reasonable."

In the determination of reasonable compensation the tangible benefit conferred on the estate and its creditors is clearly a proper measure for consideration. 2 Collier 15 Ed. Sec. 330–05(2)(d). And in *In re Kimberling Inn Resort and Vacation Club* 15 B.R. 688 (Bkrtcy.Mo.1981) it was held that the paramount consideration in determining the reasonableness of the fees allowable to an accounting firm is that of the results achieved or the benefit conferred upon the Chapter 11 estate. Additionally it should be noted that Sec. 330 of the Code prescribes reasonable compensation for "actual, necessary services".

 In a pre-Code Chapter X corporate reorganization case the Bankruptcy Court recognized that Court-appointed officers are entitled to a reasonable compensation whether or not their services produce any benefit to the estate but success of their endeavor is an extremely important factor in considering the amount to be awarded. Further while the time factor is to be con-

sidered in determining allowances, the time *necessarily* spent governs the allowances rather than the time actually spent. See *In the Matter of Aldersgate Foundation Inc.* 10 B.R. 910 (Bkrtcy.Fla.1981) citing *In Re Imperial "400" National Inc.,* 432 F.2d 232, 237 (3d Cir.1954); *United States v. Larchwood Gardens, Inc.* 404 F.2d 1108, 1110 (3d Cir.1968). Although all of these are pre-Code cases the same rationale is equally applicable here. See also *In Re Sutherland* 14 B.R. 55, 4 C.B.C.2d 1580 (Bkrtcy.Vt. 1981).

■ A careful review of the charges made leads this Court to conclude that they were made on a time clock basis and that all of the time spent was not strictly necessary to perform the functions itemized in the schedule of the applicant's "Original Engagement Letter Tasks". In this respect it is significant that while the applicant was assisting in the preparation and review of financial statements as of February 9, 1981 for which it charged 857.5 hours in the sum of $46,008.00, the debtor was using its own employees in performing the bookkeeping functions. Further, the applicant relied completely on the debtor in the preparation of its projections. This became apparent from its report dated May 21, 1981 with the following assertion:

"A compilation is limited to presenting in the form of financial statements information that is the representation of management. We express no assurances as to the methods used to prepare these projections or as to the underlying assumptions upon which these statements are based. We have no responsibility to update this report for events and circumstances occurring after the date of this report. Alexander Grant & Company".

Although the "time clock approach" has increasingly gained preeminence as a governing factor in the granting of compensation;[1] it is still subject to the requirement under Section 330 of the Code that it must be for actual, necessary services. This Court has considerable doubt that all of the services for which the applicant has billed were necessary. It is noteworthy that the accountants made application for interim compensation on June 15, 1981 which was heard on July 2, 1981. There was no approval of payment by the Court. It may be a coincidence but shortly thereafter the applicant ceased rendering services to the same extent as previously and the debtor, through its in-house comptroller, has been furnishing the financial reports and statements required by the Court.

The applicant also stresses that its charges are justified on the basis of their benefit to the debtor. It argues that its efforts resulted in keeping the debtor in business as a viable company. It is true that the debtor is still operating. However, it has contracted its operations from a company with 300 employees to one with less than 50 and a target for no more than 35. Further, the continued existence of the debtor as a business entity is due in no small measure to the use of the Company's assets for working capital this being evidenced from the loss of $1,125,000.00 in equity during the period from February 9, 1981 through September 20, 1981. In addition, although the petition for reorganization under Chapter 11 was filed February 9, 1981, as of now (16 months later), the debtor has failed to file a disclosure statement which satisfies the requirement of Section 1125 of the Code i.e. one with "adequate information"—of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. The debtor has filed 2 plans but it does not now appear likely that they will be confirmed. In sum, the applicant cannot justify the reasonableness of its requested compensation on the basis of results achieved or the benefit conferred upon the chapter 11 estate. See *Kimberly Inn Resort and Vacation Club,* supra, holding that

1. 2 Collier 15th Ed. 330–19 Sec. 330.05.

such is a paramount consideration in determining the reasonableness of fees allowable to an accounting firm.

After due consideration the Court is of the opinion that the applicant is not entitled to $121,829.00 for its services but that $80,000.00 is reasonable compensation. In addition its expenses of $7,159.00 are allowable.

### ORDER

Now, therefore, upon the foregoing it is,

ORDERED, ADJUDGED AND DECREED, that Alexander Grant & Company is allowed the sum of $80,000.00 as compensation and $7,159.00 as reimbursement for expenses making a total of $87,159.00 as an expense of administration in this chapter 11 proceeding.