**In re INTERNATIONAL COINS & CURRENCY, INC., (f/k/a Irish Coin Co.), Debtor.**

**Bankruptcy No. 81–00023.**

United States Bankruptcy Court, D. Vermont.

July 12, 1982.

William Lowry, New York City, for Stroock & Stroock & Lavan.

Roy H. Carlin, New York City, for Reavis & McGrath.

R. Marshall Witten, Bennington, Vt., for Chairman of Creditors' Committee and SIMA.

David L. Ganz, of Ganz, Hollinger & Towe, New York City, for Food & Agriculture Organization and United Nations.

Joseph C. Palmisano, Barre, Vt., for Chittenden Trust Co.

Denise J. Deschenes, St. Johnsbury, Vt., for Bucknell Press, Inc.

M. Jerome Diamond, Montpelier, Vt., for Musses Nationaux & Monnaies de Paris.

William B. Gray, Rutland, Vt., for U S Air.

Jerome F. O'Neill, Burlington, Vt., for Dr. Irving Anders.

Joseph B. Garb, pro se, of Alexander Grant & Co.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The Applications of Stroock & Stroock & Lavan, Esquires, and of Reavis & McGrath, Esquires, for compensation and expenses for professional services as attorneys for the Debtor filed on January 6, 1982 and on January 4, 1982, respectively, came on for hearing, after notice.

The Debtor filed its Application for employment of Stroock & Stroock & Lavan, Esquires, as attorneys for the Debtor on February 10, 1981 and on the same day the Court entered an Order approving the appointment of Stroock & Stroock & Lavan as attorneys for the Debtor under a general retainer for legal services to be rendered in this Chapter 11 Proceeding which was commenced by the Debtor's Petition for Relief filed February 9, 1981.

Roy H. Carlin, Esquire, of this law firm rendered most of the legal services and, upon his resigning from this firm, the Debtor on September 21, 1981 filed an Application to substitute as counsel the law firm of Reavis & McGrath, Esquires, with which Mr. Carlin became associated, and the Court did on October 12, 1981 enter an Order approving the appointment of Reavis & McGrath, Esquires, as substitute counsel for Stroock & Stroock & Lavan, Esquires, as of 1 September, 1981, nunc pro tunc. When Roy H. Carlin, Esquire, commenced his services for the Debtor as a member of the firm of Stroock & Stroock & Lavan, Esquires, he received a retainer of $50,000.00. In its application, the firm of Stroock & Stroock & Lavan seeks compensation of $153,530.70 for professional services and $9,648.90 for reimbursement of actual and necessary expenses.

The charges for compensation and expenses are itemized under Exhibits "C" and "B," respectively, attached to the application. The hourly rates for legal services range from $250.00 an hour at the top partnership level to $28.00 an hour for a parale-

gal. However, most of the services performed by Roy H. Carlin as a partner and constituting 879.9 hours were charged at the rate of $135.00 an hour for a total of $121,216.50. Further, there were charges for other partners ranging from $140.00 an hour to $250.00 an hour totaling $13,469.00, and for associates ranging from $92.00 an hour to $140.00 an hour totaling $18,188.80. These charges total $152,874.30, so that a very small portion of the compensation of $153,530.70 requested was charged at less than $92.00 an hour.

Reavis & McGrath, Esquires, are seeking compensation in the sum of $30,000.00, an average billable rate of about $100.00 an hour, together with reimbursement for expenses of $1,447.39. The charges made by Reavis & McGrath, Esquires, were for the periods of September 1, 1981 (the date on which Mr. Carlin joined the firm) through December 29, 1981. Of the total hours charged by this firm, 212.8 were at the partner level. Since the beginning of the 1982 year most, if not all, of the legal services have been rendered to the Debtor by in-house counsel, Peter B. Brittin, Esquire.

Over the years Bankruptcy Courts generally have found the fixing of compensation for professionals a difficult and unpleasant task. This case presents no exception especially since the Debtor, with some justification, found it necessary to engage the services of two prestigious law firms based in New York City for legal guidance in an attempt to extricate itself from financial disaster. As a result it is being billed for legal services at an average hourly rate which is far in excess of the $75.00—$85.00 per hour charge which is generally made for similar services by attorneys in this district.

In support of its Application, Stroock asserts that it seeks substantial compensation for assisting in converting an unprofitable, totally "out of control" company, which lost in excess of $4 million pre-petition with nothing available for general unsecured creditors, into a tightly structured creditable company with projected sales in excess of $7.5 million per year which, under the Plan, shall pay general unsecured creditors about $450,000 within 2 years, while remit-

ting a compromised amount in full of [sic] in excess of $2.6 million with interest to secured creditors. In order to enable the reorganization the secured creditors converted about $950,000 of debt to stock of Debtor subject to redemption. Confirmation, which should occur within a year from the commencement of the case, is beneficial to general unsecured creditors, the secured creditors, the Debtor and the community, according to Stroock.

In addition, it contends that it "turned the tables on Chittenden and gave the Debtor the leverage and momentum to proceed with its reorganization." It also points out that the major criterion for compensation is and must be the value of the services to the client.

Reavis & McGrath, Esquires, also seek substantial compensation for "assisting in converting an unprofitable totally 'out of control' company... into a tightly structured creditable company with projected sales in excess of $7.5 million per year..." They also point out that "Confirmation, which should occur within a year from the commencement of the case, is beneficial to general unsecured creditors, the secured creditors, the Debtor and the community."

Under § 330 of the Bankruptcy Code the Court may award to professionals, including the debtor's attorney,

"(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses."

Citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5 Cir. 1974), 2 Collier 15th Edition, 330–17 recites the litany for the allowance of reasonable compensation as follows:

"(1) the time and labor required;

(2) the novelty and difficulty of the questions presented by the case;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of a case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time pressures imposed by the client or the circumstances;

(8) the amount involved and results obtained as a result of the attorneys' services;

(9) the experience, reputation and ability of the attorneys;

(10) the undesireability of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases."

In a footnote Collier indicates that the above stated interpretation of the reasonableness standard has been relied upon, with certain modifications, by Courts determining the reasonableness of compensation under both the Bankruptcy Act and under the Code. The Court is satisfied that both Stroock and Reavis & McGrath, Esquires, have complied with most of the factors set forth in the Johnson case. However, it is not satisfied that the applicants are entitled to the amount of compensation requested on the basis of the time and labor required in performing the services and especially in view of the results obtained from legal services rendered by them.

It should be also noted that the applicants were not involved in any complex or unusual legal matters. Although there were a number of preference actions instituted, as of now none has been tried. The only litigated matter to date was handled by the in-house attorney, Peter B. Brittin, Esquire.

An examination of the time schedules indicates that on a number of occasions several attorneys from the Stroock firm were involved in the same matters affecting the Debtor which could very well lead to the conclusion that there was a duplication of services. It also appears that many

of the charges were for services not of a legal nature but pertaining to the financial problems of the Debtor. The Court realizes that there should be greater flexibility extended to an attorney for the debtor in a Chapter 11 proceeding which would necessitate the rendering of accounting and financial structuring services. However, at the suggestion of Stroock the Debtor retained, with the approval of the Court, the services of one of the leading accounting firms, Alexander Grant and Company, which filed an application for the allowance of fees in the sum of about $125,000.00. With this caliber of accounting services it would appear that Stroock could have relied more upon summaries presented by Alexander Grant and Company without the necessity of spending a great deal of time in review of the financial records of the Debtor.

It also appears that a great deal of time was spent by the applicants in travel and in the performance of ministerial functions. The charges were made for these at the usual rate billed by the legal firms. It is only reasonable that charges for such services be at a much lower rate. See *In Re Hamilton Hardware Co., Inc.*, 11 B.R. 326, 327, (Bkrtcy.) where it was held that attorney's services to a client in a bankruptcy proceeding of making and receiving telephone calls, writing and receiving letters, performing research, drafting admittedly routine pleadings, attending meeting of creditors, and traveling to and from bankruptcy court were largely routine and ministerial, and should be compensated at a lower rate than truly legal services, irrespective of experience and competency of attorney who performed them. Bankruptcy Code, 11 U.S.C.A. § 330. To like effect is *In Re Jones*, 13 B.R. 192 (Bkrtcy.).

The Court agrees with Stroock that the major criterion for compensation is and must be the value of the services to the client. See *In Re Kimberling Inn Resort and Vacation Club*, 15 B.R. 688 where the Court held that the paramount consideration in determining reasonableness of award of fees for accounting services is the result achieved or benefit conferred upon Chapter 11 estate. The same principle applies to the allowance of a reasonable attorney's fee. *In Re Richton Sportswear, Inc.*, 15 B.R. 854 (Bkrtcy.); *In Re G.A.C. Corporation*, 14 B.R. 252 (D.C.Fla.). In G.A.C. Corporation the Court also pointed out that the Bankruptcy Estate is to be charged only one fee for a particular service regardless of the number of persons involved in performing that service.

In justifying the compensation requested the applicants are attempting to take credit for "converting a non-profitable totally 'out of control' company which lost in excess of $4 million pre-petition with nothing available for unsecured creditors into a tightly structured creditable company with projected sales in excess of $7.5 million and a payment of $450,000 to unsecured creditors within two years." They also indicate that confirmation should occur within one year from the commencement of the case. The Petition for Relief was filed on February 9, 1981 and it is evident that almost one and one-half years have expired since that date. As of now, the Debtor has filed two Disclosure Statements and three Plans of Reorganization. Objection was made to both Disclosure Statements and neither one has been approved. It is true that the last two Plans filed by the Debtor provide for payment of a total of 15% to unsecured creditors with a 2% payment on confirmation and then 2% quarterly beginning 150 days after confirmation for five quarters and 3% for a quarter thereafter. Between the filing of the second and third Plans the Debtor had the benefit of insurance proceeds in the sum of $600,000.00 paid upon the death of one of the principals of the Debtor Corporation to the primary secured creditor, Chittenden Trust Company. Yet, the unsecured creditors are receiving no benefit from the reduction of this secured indebtedness. The third Plan of the Debtor provides the same 15% payment to unsecured creditors as in the second Plan.

Recently the in-house counsel of the Debtor, Peter B. Brittin, Esquire, notified the Court that the Debtor does not intend to press for acceptance of any of the Plans it has submitted. The net result is that all of the time and effort expended by the applicants which relate to the Disclosure Statements and Plans have gone for

naught. Further, recently the primary secured creditor, Chittenden Trust Company, filed a Disclosure Statement and Plan which are being noticed for hearing. In connection with such filing the Attorney for Chittenden has submitted an application for additional compensation in the sum of $60,-000.00 for services rendered from March 23, 1982 through June 28, 1982 which includes charges for 173½ hours at $85.00 per hour for services rendered on the Disclosure Statement making a total of $14,747.50 charged for this item.

Stroock has charged for 17.3 hours expended by Attorney Carlin, 3.5 hours by Attorney Andrew N. Krinsky and 44.2 hours by Chloe L. Gavin, Esquire, for services in connection with the application to reject a lease from Barmar Corporation and to resist its claim for the allowance of damages as administration expenses claimed by Barmar for breach of the lease and damages to the freehold. Although the Debtor was successful in having the lease rejected, a trial of the issues resulted in a judgment in favor of Barmar for $22,334.65 as an administrative expense.

The applicants take credit for turning the tables on Chittenden and giving the Debtor the leverage and momentum to proceed with its reorganization. Yet the record shows that from the institution of this proceeding the Debtor has been at the mercy of Chittenden Trust Company as a secured creditor and is presently faced with the inevitable result that if the company is to reorganize at all it will have to come from the approval of a Plan submitted by Chittenden.

The record also negates the claim made by the applicants that the Debtor has been converted into a tightly structured creditable company with projected sales of $7.5 million per year. The latest statements submitted by the Debtor indicate an annual projection of $4,605,000.00 in sales and based on the statements for the last three weeks the current annual projection would be $3,200,000.00 in sales. In addition, the Debtor has contracted its operation from a company with 300 employees to one with less than 50 and a target for no more than 35. Its continued existence as a business entity is due in no small measure to the use of the company's assets for working capital as appears from the loss of $1,125,000.00 in equity during the period from February 9, 1981 through September 20, 1981.

The purpose of a Chapter 11 proceeding is the rehabilitation of the debtor and the payment of a meaningful dividend to unsecured creditors. From the history of this proceeding the Court has serious reservations whether the Debtor can continue to survive as a viable business entity if a plan is in fact confirmed. Further, the Court is skeptical that the unsecured creditors will realize as much from a confirmed plan as they would have received if the Debtor had filed for relief under a Chapter 7 liquidation.

Based on the factors which the Court should take into account in the fixing of reasonable compensation with emphasis on the success that should have been obtained through the efforts of the applicants, as well as the customary fees which are charged in this community for similar work performed by the Attorneys for the Debtor, the Court concludes that the amounts of $153,530.70 and $30,000.00 sought by Stroock and by Reavis & McGrath, Esquires, as compensation are excessive. They should, however, be allowed reimbursement for actual and necessary expenses in full. Accordingly, the Court fixes for legal services performed by Stroock the sum of $95,000.00 and the sum of $17,500.00 to Reavis & McGrath, Esquires, for legal services.

Having said all of this it would be grossly unfair for the Court not to mention that the two law firms in this proceeding are extremely competent and skillful in bankruptcy practice. Attorney Carlin did indeed satisfy the Court in his appearances and in the preparation of the various pleadings, that he has had considerable experience in Chapter 11 proceedings and, in the proper case, he would realize a high degree of success. Unfortunately, the Court feels that his efforts were somewhat stymied in this case with the Chapter 11 proceeding actually constituting a going business liquidation under the aegis of Chapter 11 for the benefit of the secured creditor.

## ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED in this Chapter 11 Proceeding as follows:

1. Stroock & Stroock & Lavan, Esquires, are allowed the sum of $95,000.00 as compensation for legal services, of which $50,000.00 has been paid as a retainer, thereby leaving a balance of $45,000.00 due as an administrative expense.

2. Stroock & Stroock & Lavan, Esquires, are allowed the expenses of $9,648.90 as an expense of administration.

3. Reavis & McGrath, Esquires, are allowed the sum of $17,500.00 as compensation for legal services as an administrative expense.

4. Reavis & McGrath, Esquires, are allowed the expenses of $1,447.39 as an expense of administration.