In the Matter of RELIABLE INVESTORS CORPORATION and SoPark Corporation, Debtors.

Bankruptcy Nos. MM11–84–01522, MM11–84–01523.

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 19, 1986.

MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

Bell, Metzner & Gierhart, S.C., the debtor's general counsel in this chapter 11 case,

has applied for interim compensation pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b) covering the period August 13, 1984, through April 30, 1985. A total of $126,533.00 in fees and $4,837.93 in disbursements is requested. The firm has received a retainer of $65,000.00 and has received advances during the pendency of this matter totalling $51,503.00. The firm also requests that an additional $40,000.00 be advanced as a retainer for future services. Hourly rates ranging from $65.00 per hour to $90.00 per hour have been requested for attorneys' services set forth in the application.

A plan has been confirmed in this case in part through the efforts of this applicant.

Bell, Metzner & Gierhart is a firm of excellent reputation and vast experience in many fields other than bankruptcy. Although assisted by co-counsel on many aspects of the case there has obviously been a need to bring the Bell, Metzner & Gierhart lawyers up to speed in the sometimes arcane considerations and rules of bankruptcy. The application may well reflect this relative inexperience.

Beyond specifying the dates of services, hours worked, and the attorney(s) who billed the hours, the description of fees in the application is seriously inadequate. Many descriptions are so general as to be all but meaningless; typical examples are:

| DATE | ATTORNEY NUMBER | DESCRIPTION | HOURS WORKED | AMOUNT |
|---|---|---|---|---|
| 8/13/84 | 02 | Bankruptcy matters | 5.00 | $400.00 |
| 8/16/84 | 02 | Bankruptcy matters | 8.00 | 640.00 |
| 8/22/84 | 21 | Work on memo; proofread memo | 3.10 | 186.00 |
| 10/17/84 | 02 | Plan of Reorg. Grossman agreement revisions & conf's | 8.00 | 640.00 |
| 11/02/84 | 02 | Meeting Milwaukee re Plan of Reorg. | 8.00 | 640.00 |
| 1/02/85 | 02 | Preparation for hearing | 12.00 | 960.00 |

Other entries list numerous ambiguously identified activities on the same date. Those entries lack the specificity appropriate in a complex bankruptcy case and are so arranged as to make it impossible to ascertain how much time was spent in each activity. Typical examples include:

| | | | | |
|---|---|---|---|---|
| 8/17/84 | 21 | Tel call J. Stewart; research; ltr. re employee's salaries under chp. 11; draft ltr; tel call client; tel call J Stewart; research; office conf; research bond discovery questions | 3.50 | 210.00 |

| 10/29/84 | 21 | Prepare for conf.; confs.; work on MG&E Brief; prepare for MG&E hrng; review Liquidator's FFCL and ltr. to judge; research fraudulent conveyance; draft summons and complaint to avoid conveyances; memo to file; draft affidavits in support | 8.80 | 572.00 |

Still other entries request compensation for billable hours which are excessive in the absence of detailed itemization and justification. For example, an entry on October 18, 1984, reads:

| 10/18/84 | 02 | Conf. Chicago Grossman Stewart et al. | 17.00 | 1360.00 |

Similarly on October 22, 1984, the following entry appears:

| 10/22/84 | 02 | Reorganization matters conf's rsch & revisions 10/22 through 10/26 60 hours | 60.00 | 4800.00 |

Although most of the entries are vague they are not so vague as to fail to suggest significant duplication of effort and wasted time. For example, between September 18, 1984, and November 28, 1984, there appear to be at least eighteen vaguely worded entries involving research of the law concerning preferential transfers, undertaken by four different attorneys. Both the time over which the research occurred, and the fact that so many attorneys worked on the same issue compels an inference of duplication and waste. Many of the large number of office conferences and client conferences do not deserve compensation at the full rate claimed for professional services of each of the attorney participants.

A further and more detailed discussion of the inadequate itemization contained in this fee request is unnecessary. The applicant has been assisted by specialized bankruptcy counsel from whose advice or example the necessity for specificity and detail in applications of this sort could have been learned. This request for more than $125,000.00 in fees must be subjected to the sort of strict scrutiny which is traditionally applied to any request for an administrative allowance in a bankruptcy case.

Attorney fees in bankruptcy are governed by section 330 of the Code which provides in relevent part:

(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

(b) There shall be paid from the filing fee in a case under chapter 7 of this title $45 to the trustee serving in such case, after such trustee's services are rendered.

11 U.S.C. § 330(a), (b).

The legislative history further clarifies the standard to be applied:

Section 330 authorizes the court to award compensation for services and reimbursement of expenses of officers of the estate, and other professionals. The compensation is to be reasonable, for economy in administration is the basic objective. Compensation is to be for actual necessary services, based on the time spent, the nature, the extent and the value of the services rendered, and the cost of comparable services in nonbankruptcy cases.... An allowance is the result of a balance struck between moderation in the interest of the estate and its security holders and the need to be 'generous enough to encourage' lawyers and others to render the necessary and exacting services that bankruptcy cases often require.

Senate Report No. 95–989, 95th Cong., 2d Sess. 40–41 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5826–5827, 3 App. *Collier on Bankruptcy* (15th ed. 1985). Courts have frequently adopted the following criteria to guide the awarding of attorney's fees:

1. The time and labor required.
2. The novelty and difficulty of the question.
3. The skill required to perform the legal services properly.
4. The preclusion of other employment by the acceptance of this employment.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or other circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorney.
10. The undesirability of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

*In Re Krueger*, 82–C–846 (W.D.Wis. Feb. 2, 1983); *In Re Moody*, No. MM11–83–00167 (Bankr.W.D.Wis. Mar. 15, 1984); *In Re Smith*, 48 B.R. 375, 379 (Bankr.C.D.Ill. 1984). These criteria, announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), have recently been cited with approval by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 430, n. 3, 103 S.Ct. 1933, 1937, n. 3, 76 L.Ed.2d 40, 48, n. 3 (1983).

 The burden of proving that the fees in question are "reasonable and necessary" is upon the party making application. 11 U.S.C. § 330; *Hensley, supra.* 103 S.Ct. at 1941; *In Re Nor-Les Sales, Inc.*, 32 B.R. 900, 902 (Bankr.E.D.Mich.1983). As with priority claims in general, a claim for attorney's fees is properly subject to strict scrutiny. *See generally Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974); *In Re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D. N.Y.1982). Vaguely worded fee applications are insufficient. *In Re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983).

 A painstaking effort has been made to apply the principles discussed above to the present application. That careful review of itemized entries leads to the inescapable conclusion that the number of hours billed is significantly greater than reasonable, both with respect to those matters in which the debtor prevailed and those in which the debtor lost.[1] None-

---

1. In one matter, for example, the debtors moved for an ex parte order to prevent dissemination of a creditor's motion to convert to chapter 7 or to appoint a trustee. In a published decision this court rejected the debtor's arguments as wholly meritless. *See In Re Reliable Investors Corp.*, 44 B.R. 904 (Bankr.W.D.Wis.1984).

theless, it should be noted that the hourly rates sought are well within the range of reasonableness for this area and the quality of most of the representation provided by this excellent firm is above reproach. Upon the entire record in these cases the reasonable value of the services rendered by Bell, Metzner & Gierhart justifies the approval of $105,000.00 in attorneys' fees for the period covered by this application. Sums in excess of that amount held by Bell, Metzner & Gierhart may be retained, together with such additional payments from the debtor as are necessary to fund a retainer of not more than $40,000.00 to secure payment of such further fees as may be allowed in this case.

█ Although the disbursements for which reimbursement is sought seem on the basis of the limited specificity of the application to be within a reasonable range, it appears that at least $1,950.00 has been requested for copying. Neither the number of copies made nor the charge per copy is listed in most entries. In-house copying charges could be denied outright as part of the firm's ordinary overhead. *See In Re Rego Crescent Corp.*, 37 B.R. 1000, 1009 (Bankr.E.D.N.Y.1984). Denial of all copying charges would further be warranted in this case by the failure to specify the per copy charge. In the absence of a stated charge per copy it appears that a rate substantially in excess of 10¢ per copy was actually charged. Interim disbursements of $3,800.00 for the period August 13, 1984, through April 30, 1985, is all that may reasonably be allowed under the circumstances.

An order may be entered accordingly.