**In the Matter of CHAPMAN FARMS, Bernard Chapman and Patricia Chapman, Gregory Chapman and Mary Kay Chapman, Debtors.**

Bankruptcy Nos. MM11–84–01752, MM11–84–02179 and MM11–84–02180.

United States Bankruptcy Court, W.D. Wisconsin.

March 17, 1986.

---

Mark Bromley, Kinney, Urban, Schrader, Bromley & Kussmaul, Lancaster, Wis., Matthew P. Gerdisch, Law Offices of Jeffrey P. White, P.C., Chicago, Ill.; for debtors.

## MEMORANDUM DECISION

. ROBERT D. MARTIN, Bankruptcy Judge.

A final application for compensation was filed by the Law Offices of Jeffrey P. White, P.C. ("White") for services to the debtors in these cases. On September 17, 1984, the Chapman Farms Partnership chapter 11 case was filed. Bernard and Patricia Chapman and Gregory and Mary Kay Chapman filed their chapter 11 cases on November 13, 1984. On November 21, 1984, the petition of the Chapman Farms Partnership was dismissed. On March 11, 1985, White moved to withdraw as counsel for the debtors. The motion to withdraw was granted on March 12, 1985. The debt-

ors' current attorneys, Kinney, Urban, Schrader, Bromley & Kussmaul have asked the court to review the White fee application and to order the refund of any amounts charged which exceed the reasonable value of the services rendered.

White is seeking $21,361.40 for a total of 253.43 billable hours at rates of $80.00 or $100.00 per hour depending upon the attorney rendering the services. Seventy-two of the hours sought to be charged are for travel time primarily from White's Chicago office to the debtors' residence or the bankruptcy court in Wisconsin for which the firm is seeking reimbursement at half the normal attorney rate.

■ Preliminarily it should be noted that this entire fee petition could be rejected for several reasons. First, the fees are not properly allocated between those due to the Chapman Farms partnership case and those due to the individual cases. It is impossible by an examination of the line entries accompanying the petition to verify the number of hours spent on the Chapman Farms case. Most entries prior to November 13, 1984, may be presumed to have involved that partnership case. When the total of hours billed prior to November 13, 1984, which were apparently related to the Chapman Farms case, is added to the total of hours after November 13, 1984, explicitly billed to Chapman Farms the total is far more than the 72.48 hours identified to the partnership case by White. Second, the hours billed to the individual cases provide no indication as to the allocation between those cases.

A further problem of specificity is that most of the entries do not adequately describe the activities for which recovery is sought. Many entries combine numerous activities without breaking down the amount of time spent on each individual item. In short, the itemized application presented to the court even apart from the substantive deficiencies which will be dis-

cussed below is hopelessly inadequate and could justly be refused in its entirety.[1]

Despite the insufficiency of the fee petition, it is apparent that at least some compensable hours exist for which a claim may be allowed. I have therefore labored to interpret the itemized entries in a way that will allow recovery wherever possible. The standard for determining compensable attorney fees in bankruptcy cases is found in section 330 of the Code which provides in relevant part:

(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a). The legislative history indicates:

Section 330 authorizes ... compensation [which] is to be reasonable, for economy in administration is the basic objective. Compensation is to be for actual necessary services, based on the time spent, the nature, the extent and the value of the services rendered, and the cost of comparable services in nonbankruptcy cases....
... An allowance is the result of a balance struck between moderation in the interest of the estate ... and the need to be 'generous enough to encourage' lawyers and others to render the necessary and exacting services that bankruptcy cases often require.

Senate Report No. 95–989, 95th Cong.2d, Sess. 40–41 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5826, 5827, 3 *App. Collier on Bankruptcy* (15th ed. 1985).

Many courts have adopted the following criteria in evaluating claims for attorney's fees:

1. The time and labor required.
2. The novelty and difficulty of the question.
3. The skill required to perform the legal services properly.
4. The preclusion of other employment by the acceptance of this employment.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or other circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorney.
10. The undesirability of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

*See In Re Reliable Investors Corp.*, 60 B.R. 98 (Bankr.W.D.Wis. 1986); *In Re Rosen*, 25 B.R. 81, 86 (Bankr.D.S.C.1982). *See also Hensley v. Eckerhart*, 461 U.S. 424, 430, n. 3, 434, n. 9, 103 S.Ct. 1933, 1937, n. 3, 1940, n. 9, 76 L.Ed.2d 40 (1983) (citing the above factors with approval).

■ As with all priority claimants an applicant for attorney's fees in a bankruptcy case bears the burden of proving the necessity and reasonableness of the charges sought. It is particularly critical in this matter that White meet a high standard of proving the fees reasonable and necessary. The debtors' reorganization has proven unfeasible and it is apparent from my observation of the conduct of these three cases that White has rendered

1. *In Re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983).

services of questionable value. Even a rudimentary analysis by an able practitioner would have revealed at the outset that reorganization in these cases was impossible, or so very improbable as to make the effort of dubious economic benefit. As has been noted above, a considerable number of hours was spent on the partnership case. That case was the first filed. Two months after its filing this court determined at a hearing that no partnership existed and dismissed the case. An examination of the record as a whole leads to the conclusion that at no time was there even a colorable basis for a claim of partnership status. Although the debtors in this case had formerly been engaged in business as a partnership, they explicitly repudiated their partnership status some years previous to the filing. No partnership income tax returns had been filed in recent years. The real and personal property involved was individually titled, and business was transacted with the parties' creditors on the basis of individual ownership. The debtors' counsel appealed the decision of this court to the district court and attempted to secure a stay pending appeal. However, the district court dismissed the appeal because of the debtors' failure to prosecute the case. Whether the filing of the partnership case resulted from a failure of reasonable inquiry to determine if the statements of the petition were well grounded in fact or from the adoption of a tactical approach which the law does not support, the result was to multiply the time and expense of the proceeding without providing material benefit either to the debtors or their creditors who are now asked to foot the bill.

The individual chapter 11 cases have also proved unsuccessful in achieving reorganization. On January 23, 1985, this court granted relief from the automatic stay to two principal creditors of the debtors because of the debtors' inability to offer adequate protection. At that hearing I noted the seriously flawed testimony presented by the expert witness selected and presented by White. I further noted at that hearing and at other hearings in this matter the lack of professionalism which has characterized White's handling of these cases. In particular, a young woman of the White firm demonstrated at that and other appearances total ineptitude.

A careful examination of the "itemized" daily entries in the fee petition reflects the bumbling inefficiency which was observed in open court. A grossly excessive number of hours have been billed in relation to the needs of the cases. Most, if not all, of the hours billed in the Chapman partnership case cannot meet the "reasonably necessary" standard. The filing of the partnership case, followed by the filing of the individual cases has resulted in needless waste and duplication of effort not only by White but by all the parties involved in the cases. It is more a demonstration of cheek than honor that White should attempt to receive a substantial recovery in both the partnership case and the individual cases.

The travel time claimed must be given special scrutiny. While it may be deemed reasonable to retain notoriously skilled expert counsel from a distant locale to serve in a case of unusual complexity, the reasonableness of such service is dependant upon necessity and quality of the actual services rendered. Although no farm reorganization case is simple, there is nothing about the present case which would appear to surpass the capacity of several able counsel available within thirty-five miles of the debtors' residence. Furthermore, there is nothing about the reputation or performance of White which would suggest it possesses special expertise, or for that matter, even full competence to deal with the complex issues of this farm case.

■   There are substantial problems with both the quantity and quality of work performed in these cases. A partial list of the many problems presented by this fee application includes: the performance of legal work not reasonably necessary to the cases; improper itemization and breakdown of activities; grossly excessive office "con-

ferencing," and reviewing of files and documents; excessive time spent considering the particular activity billed; excessive telephone calls; and extensive attorney duplication of effort. In particular, many of the entries billed by one young attorney suggest a gross waste of time. Particularly excessive was the time spent attempting to learn basic bankruptcy law and court procedure. Although it would be possible to itemize the perceived excesses in the application it would serve little purpose. Suffice it to say that this application has received a careful and thorough analysis. Upon a consideration of all the facts and circumstances in these cases a total award of $7,500.00, the amount of the initial retainer, is a reasonable and adequate compensation for the services White rendered and the costs and disbursements incurred in these cases.

A brief comment on the expenses is in order. Nearly all categories of expenses could justly be reduced. There are excessive costs of meals and travel. Filing fees for the partnership case are dubious, as are all costs associated with the appeal. Copying fees are stated at well above the common rate for bulk copying. The miscellaneous expenses entry of $342.50 for a hearing transcript is insufficiently described and likely relates to the appeal of the dismissal of the Chapman Farms Partnership case. Rather than calculate the allowable expenses with precision, the allocation between fees and expenses can safely be left in the hands of the applicant.