**In re S.T.N. ENTERPRISES, INC.,
d/b/a Atwater Arms, Debtor.**

**Bankruptcy No. 84–98.**

United States Bankruptcy Court,
D. Vermont.

March 3, 1987.

See also, Bkrtcy., 45 B.R. 959; Bkrtcy., 44 B.R. 512; Bkrtcy., 45 B.R. 941; Bkrtcy., 45 B.R. 951; Bkrtcy., 51 B.R. 132; Bkrtcy., 45 B.R. 935; Bkrtcy., 45 B.R. 946; Bkrtcy., 45 B.R. 955; Bkrtcy., 47 B.R. 315.

824

John R. Canney, III, Carroll, George & Pratt, Rutland, Vt., for debtor.

Steven M. Gates, Albany, N.Y., pro se.

Jerome I. Meyers, White River Junction, Vt., for unsecured creditors' committee.

FRANCIS G. CONRAD, Bankruptcy Judge.

The debtor filed for protection under Chapter 11 of the Bankruptcy Code on May 29, 1984. Steven M. Gates, debtor's co-counsel, has submitted a final application for legal fees. The attorney for the creditors' committee objects to this application because, in his view, the documentation is inadequate, the pre-petition services listed were not sufficiently connected to the filing of the petition, and the applicant duplicated the services of debtor's local counsel.

S.T.N. Enterprises first retained the applicant, a sole practitioner from New York State, on April 19, 1984, some six weeks before filing its petition. One week later Attorney Gates became its general counsel. He served as lead counsel to the debtor-in-possession until the summer of 1984, when he became co-counsel with the firm of Carroll, George & Pratt, debtor's local attorneys. After September 21, 1984, Carroll, George & Pratt took over as lead counsel in the case. Between February 13th and September 9th 1985, when he formally ceased representing the debtor, Attorney Gates's work was confined to a few particular matters. The applicant has submitted a final bill for 528 hours at $90.00 an hour for his legal services between April 19, 1984 and March 31, 1985, amounting to $47,520.00 in fees, and for an additional $4,077.92 in expenses.

On April 5, 1985, after a hearing two days earlier on his first interim application for attorney's fees, the Court issued an Order granting Attorney Gates an advance of $15,000.00. After continued hearings on a second interim application, we awarded him an additional advance of $5,000.00 on December 10, 1985. In the meantime, Attorney Gates has asked us to treat this second interim application, revised and supplemented, as the final application for his legal fees and expenses through March 31, 1985.[1] He has, however, filed another fee application covering the period April 1, 1985 through December 31, 1986, and also adding recently discovered services that should have been included in the interim applications.

In evaluating the requested fees, we have reviewed his applications for interim compensation, including some forty seven pages of narrative and nine attachments, a revised expense statement of ten pages with thirty pages of selected receipts, and an amended statement of eighty six pages of services rendered, including five appendices and a correspondence log of twenty pages. We have also examined the interim applications of Carroll, George & Pratt for

---

1. He also asks permission to claim reasonable compensation for services and expenses incurred in preparing and defending this applica-
tion. Statement Supporting Second Application for Interim Compensation at 47.

their attorneys' fees, as well as the documents of record reflecting the tortuous history of this case and its many adversary proceedings. Finally, we have considered the arguments made at the hearings on this application and the memoranda submitted by the applicant and the unsecured creditors' committee. We make our findings and draw our conclusions in light of this material.

Attorneys' fees are naturally a matter of immediate concern to those who practice before the Bankruptcy Court. For the Court, their determination is "a difficult and unpleasant task," *In re International Coins & Currency, Inc.*, 22 B.R. 127, 128, 7 C.B.C.2d 163 (Bkrtcy.D.Vt.1982) (*I.C.C. I*), that requires juggling countless specific compromises and striking a balance between the competing considerations for each potentially compensable service or expense. The best we can hope for is, in Albert Camus' phrase, "human justice, with its considerable imperfections." Expanding on earlier decisions of this Court, we use this occasion to set some guidelines for counsel applying to us for their fees and expenses. Our hope is that the guidelines will reduce the uncertainty surrounding fee applications in this District and that this will reduce the amount of Court time reviewing fee applications.

■ An attorney is entitled to reasonable compensation for actual, necessary services based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services outside bankruptcy; and to reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a). An attorney representing a debtor in Chapter 11 must obtain the prior approval of the Court under 11 U.S.C. §§ 327(a) and 1107(a) and Bankruptcy Rule 2014(a). See, *e.g., Hunter Savings Association v. Baggott Law Offices Co., L.P.A.*, 34 B.R. 368, 373 (S.D. Ohio 1983), rev'd on other grounds *sub nom. In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984). The Court will disallow any compensation to attorneys who provide services without the Court's approval. *In the Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925 (2d Cir.1979) (*per se* standard); *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203 (3d Cir.), *cert. denied*, 396 U.S. 823, 24 L.Ed.2d 74, 90 S.Ct. 66 (1969) (*per se* standard). In exceptional circumstances, however, the Court under its equitable powers may grant *nunc pro tunc* orders approving employment to alleviate the harsh results of the *per se* rule. *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983); *Matter of Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976); *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973); *In re Kroeger Properties & Development, Inc.*, 57 B.R. 821 (Bkrtcy. 9th Cir.1986); *In re Amherst Mister Anthony's Ltd.*, 63 B.R. 292 (W.D. N.Y.1986).

■ In a bankruptcy case fees are not a matter for private agreement. There is inherent a public interest that must be considered in awarding fees. Senate Report No. 95–989, 95th Congress, 2d Session 40 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Accordingly, the Code imposes on us a supervisory obligation not only to approve counsel's employment but also to ensure that counsel's bills are reasonable, the services and expenses actual and necessary. Under 11 U.S.C. §§ 327–330 and Bankruptcy Rules 2016 and 2017, the Court has an independent judicial responsibility to evaluate the attorneys' fees. *In re International Coins & Currency, Inc.*, 26 B.R. 256, 260, 7 C.B.C.2d 780 (Bkrtcy.D.Vt.1982) (*I.C.C. III*). In order to prevent overreaching, *In re N.S. Garrott & Sons*, 54 B.R. 221, 222 (Bkrtcy.E.D.Ark. 1985), the Court may reject proposed legal fees despite the parties' stipulation, *In re International Coins & Currency, Inc.*, 26 B.R. at 260; *In re Gulf Hills Development Corp.*, 60 B.R. 366, 368 (S.D.Miss.1985), and without any objections from the parties, *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 219 (Bkrtcy.S.D.N.Y.1986); *In re Wilson Foods Corp.*, 36 B.R. 317, 320, 11 B.C.D. 722 (Bkrtcy.W.D.Okla.1984); *In the Matter of Hamilton Hardware Company, Inc.*, 11 B.R. 326, 329, 7 B.C.D. 963, 4

C.B.C.2d 699 (Bkrtcy.E.D.Mich.1981). Our judicial responsibility is especially acute when the attorney seeks compensation out of the bankruptcy estate. *In re International Coins & Currency, Inc.*, 26 B.R. at 260.

■■■ The attorney applying for legal fees in bankruptcy bears the burden of proving the reasonableness of the fees. *In the Matter of Chapman Farms*, 58 B.R. 822, 824 (Bkrtcy.W.D.Wis.1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 429, 12 B.C.D. 197, 11 C.B.C.2d 47 (Bkrtcy. D.Ak.1984); *In the Matter of Hamilton Hardware Company, Inc.*, 11 B.R. 326, 329 (Bkrtcy.E.D.Mich.1981). In order to sustain this burden, the applicant must present a carefully detailed application and supporting documentation. See *In the Matter of Mead Land & Development Co., Inc.*, 577 F.2d 858, 860 (3d Cir.1978); *In re Jansen*, 47 B.R. 641, 643 (Bkrtcy.D.Ariz. 1985); *In the Matter of Daylight Transport, Inc.*, 42 B.R. 20, 23 (Bkrtcy.N.D.Ala. 1984); *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bkrtcy.E.D.Pa.1981). At the very least, every application for attorneys' fees must include a specific analysis of each task that compensation is sought for. When different services are lumped together, we cannot determine whether the time allotted for each is reasonable. See *In re WHET, Inc.*, 58 B.R. 278, 281–82 (Bkrtcy. D.Mass.1986); *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bkrtcy.E.D.Pa.1984); *In re Nation/Ruskin, Inc.*, 22 B.R. 207, 210 (Bkrtcy.E.D.Pa. 1982). This Court will summarily disallow time for discrete legal services merged together in the application for fees. Compare *In re Seneca Oil Company*, 65 B.R. 902, 909 (Bkrtcy.W.D.Okl.1986); *In re Esar Ventures*, 62 B.R. 204, 205 (Bkrtcy.D.Hawaii 1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 434, n. 11 (Bkrtcy.D.Ak. 1984); *In re Horn & Hardart Baking Company*, 30 B.R. 938, 944–45 (Bkrtcy.E. D.Pa.1983).

■■■ Before awarding fees out of the bankruptcy estate, we shall insist that counsel conscientiously set forth the hours expended on each task and the nature of the services rendered at a level of specificity that would allow us to evaluate the application. A fee application should be self-contained. Compare *In the Matter of Borgenicht*, 470 F.2d 283, 284 (2d Cir.1972); *In the Matter of Affinito & Son, Inc.*, 63 B.R. 495, 498–99 (Bkrtcy.W.D.Pa.1986); *In re Neibart Associates Press, Inc.*, 58 B.R. 212, 214 (Bkrtcy.E.D.N.Y.1985); *In re Thacker*, 48 B.R. 161, 163 (Bkrtcy.N.D.Ill. 1985). Under 11 U.S.C. § 330(a), the Court must establish, initially, whether the billed service is compensable; secondly, whether it was actual and necessary; and, finally, whether the amount charged is reasonable based on the nature, extent, and value of the services. Identification of the category of service provided enables us to determine whether it is inherently compensable; contemporaneous time records disclose whether a service was actually performed, and the explanations accompanying each listed service justify their necessity. The explanation of each task in relation to the case, and the time expended and amount charged for performing the task, allow us to assess the reasonableness of the attorney's fees in light of the nature, extent, and value of the work. Compare *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985); *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573–74 (N.D.Ind.1984); *In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bkrtcy.E.D.N.Y.1986).

■■■ Henceforth, to be considered by this Court, an application for attorneys' fees must clearly identify each discrete task billed to the estate, indicating the date it was done, the precise amount of time spent, whom it was done by, and the person's hourly rate. See, *e.g.*, *In re WHET, Inc.*, 58 B.R. 278, 281–82 (Bkrtcy.D.Mass. 1986). The time listed should be scrupulously accurate, and may not be billed in increments greater than one-tenth of an hour for professional services, nor one-twentieth (three minutes) for telephone calls. Compare *In re Seneca Oil Company*, 65 B.R. 902, 909 (Bkrtcy.W.D.Okl. 1986); *In re Tom Carter Enterprises, Inc.*,

55 B.R. 548, 549 (Bkrtcy.C.D.Cal.1985); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 427, n. 1 (Bkrtcy.D.Ak.1984); *In re Sapolin Paints, Inc.*, 38 B.R. 807, 814, 11 B.C.D. 875, 10 C.B.C.2d 833 (Bkrtcy.E.D.N.Y. 1984); *In the Matter of Hamilton Hardware Company, Inc.*, 11 B.R. 326, 331 (Bkrtcy.E.D.Mich.1981).[2] The application must clearly identify the person performing each specific activity and the person's position, whether senior partner, junior partner, associate, law clerk, paralegal, or other staff. *In re W.T. Grant Co.*, 12 C.B.C. 694, 695 (S.D.N.Y.1977). In addition to identifying their customary hourly rate, attorneys and others the Court is not acquainted with should furnish information about their experience, particularly in bankruptcy. See *In re Woerner*, 67 B.R. 685, 687 (Bkrtcy.E.D.Pa.1986). The provider's level of expertise is, of course, a critical factor in setting a reasonable hourly rate. See *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983); *In the Matter of Arlan's Department Stores, Inc.*, 462 F.Supp. 1255, 1269 (S.D.N.Y.1978), aff'd, 615 F.2d 925 (2d Cir.1979).

■■■■■■ An application to us for attorneys' fees must also explain each identified task billed to the estate. The applicant should describe the factual particulars and the subject matter, and delineate the relationship of the activity to the estate, the purpose of the activity, and the results for the estate. Compare *In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bkrtcy.E.D. N.Y.1986); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 581, 12 B.C.D. 978 (Bkrtcy.D.Utah 1985); *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 361 (Bkrtcy.E.D.N.Y.1982); *In re Hotel Associates, Inc.*, 15 B.R. 487, 488, 5 C.B.C.2d 669 (Bkrtcy.E.D.Pa.1981). Items such as meetings, conferences, correspondence, and telephone calls should identify the participants, describe the substance of the communica-

tion, explain its outcome, and justify its necessity. See *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573–74 (N.D.Ind.1984); *In re Doyle-Lunstra Sales Corp.*, 19 B.R. 1003, 1006–07, 6 C.B.C.2d 1330 (D.S.D.1982); *In re Taylor*, 66 B.R. 390, 395 (Bkrtcy.W.D.Pa.1986); *In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bkrtcy.E.D.N.Y.1986); *In re American International Airways, Inc.*, 47 B.R. 716, 724 (Bkrtcy.E.D.Pa.1985); *In the Matter of Dee's Resort Wear, Inc.*, 25 B.R. 591, 592 (Bkrtcy.M.D.Fla.1982); *In the Matter of Hamilton Hardware Company, Inc.*, 11 B.R. 326, 330 (Bkrtcy.E.D.Mich.1981); *In the Matter of Texas Gulf Industries, Inc.*, 4 B.C.D. 186, 191, 16 C.B.C. 129, 139, n. 8 (Bkrtcy.S.D.Texas 1978). Similarly, time for negotiations should identify who was involved, describe the subject matter of the dispute, explain the relationship to the bankruptcy, and recite the results. Correspondence and other documents referred to in the application should be identified by the date, the author, and the subject matter. When billing for legal research, the applicant should identify each specific issue, and should explain why this issue needed to be researched and what use was made of the research in the bankruptcy case. See *In re Four Star Terminals, Inc.*, 42 B.R. 419, 435, n. 12, 443 (Bkrtcy.D. Ak.1984); *In re Art Shirt Ltd., Inc.*, 30 B.R. 318, 319 (Bkrtcy.E.D.Pa.1983); *In re Best Pack Seafood, Inc.*, 21 B.R. 852, 854, 9 B.C.D. 389 (Bkrtcy.D.Me.1982); *In the Matter of Hamilton Hardware Company, Inc.*, 11 B.R. 326, 330 (Bkrtcy.E.D.Mich. 1981). When charging the estate for preparing or reviewing legal papers, the applicant should clearly identify the document involved and specify the work performed, such as outlining, drafting, revising, cite-checking, proof-reading, photocopying, or indexing. See *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bkrtcy.E.D.Pa.1981); *In*

---

**2.** As the Court in *Tom Carter Enterprises* explained, "professional persons who charge their clients fees in excess of $80.00 per hour, based upon time spent, cannot, in all honesty and reasonableness, charge their clients for increments in excess of one-tenth of an hour." *Id.* at

549. As to telephone calls, Judge Goetz points out that "the telephone company's rates are predicated upon the premise that most telephone calls terminate within three minutes." *Sapolin Paints* at 815.

**834**

re Lafayette Radio Electronics Corp., 16 B.R. 360, 361 (Bkrtcy.E.D.N.Y.1982).

An attorney claiming reimbursement from the estate for expenses incurred in the case must likewise furnish enough specificity for the Court to establish whether a given expense was both actual and necessary under 11 U.S.C. § 330(a)(2). Only fully documented, actual, out-of-pocket expenses will be reimbursed. In re Seneca Oil Company, 65 B.R. 902, 912 (Bkrtcy.W.D.Okl.1986); In the Matter of Union Cartage Company, 56 B.R. 174, 178 (Bkrtcy.N.D.Ohio 1986); In re Thacker, 48 B.R. 161, 165 (Bkrtcy.N.D.Ill.1985); In re Tolan, 41 B.R. 751, 756 (Bkrtcy.M.D. Tenn.1984). For example, an applicant may only claim the actual cost of photocopying, not to exceed twenty cents a page. Compare Seneca Oil Company, 65 B.R. at 913; In re Trak Microcomputer Corp., 58 B.R. 708, 713–14 (Bkrtcy.N.D.Ill.1986); Union Cartage Company, 56 B.R. at 178; In re Island Helicopter Corp., 53 B.R. 71, 73 (Bkrtcy.E.D.N.Y.1985); In re Four Star Terminals, Inc., 42 B.R. 419, 427, n. 1 (Bkrtcy.D.Ak.1984).[3] Similarly, we shall reimburse an applicant's out-of-pocket costs for documented and necessary travel, including no more than 21.0 cents a mile for travel by personal car. This rate may be adjusted up or down in the future. We intend, at present, to follow the mileage rate allowed by the Internal Revenue Service. The application must also substantiate the need for each item of expense. In re American International Airways, Inc., 47 B.R. 716, 725 (Bkrtcy.E.D.Pa.1985). When listing travel to a meeting as an expense, the applicant should explain why the exchange could not have been conducted by telephone. Meetings do not, like negotiations, necessarily require an attorney's physical presence. In re Four Star Terminals, Inc., 42 B.R. 419, 437–38 (Bkrtcy.D.Ak.1984). When including long-distance telephone calls, in addition to iden-

tifying the date, duration, person called, and telephone company charges, and describing the subject matter of the call, In re American International Airways, Inc., 47 B.R. at 725, the applicant should indicate why a letter would not have sufficed. Similarly, any extraordinary postal expenses must be justified. The cost of express mail should not be borne by the estate because an attorney has procrastinated in preparing or filing papers. In each instance, the burden falls on the applicant to establish that the less expensive alternative was properly rejected.

Detailed contemporaneous (not "reconstructed") records of professional services and receipts for expenses must be available to the Court, which may demand their production. See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir.1986); Cohen & Thiros, P.C. v. Keen Enterprises, Inc., 44 B.R. 570, 573–74 (N.D.Ind.1984); In re Seneca Oil Company, 65 B.R. 902, 908 (Bkrtcy.W.D.Okl.1986); In re WHET, Inc., 58 B.R. 278, 281–82 (Bkrtcy.D.Mass.1986); In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 582 (Bkrtcy.D.Utah 1985); In re Wilson Foods Corporation, 36 B.R. 317, 320 (Bkrtcy.W.D.Okla.1984). We shall refuse compensation or reimbursement when the supporting records are unreliable or lack specificity. See In the Matter of Affinito & Son, Inc., 63 B.R. 495, 498 (Bkrtcy.W.D. Pa.1986); In re Jensen-Farley Pictures, 47 B.R. at 582; In re Four Star Terminals, Inc., 42 B.R. 419, 427, n. 1 (Bkrtcy.D.Ak. 1984); In re Horn & Hardart Baking Co., 30 B.R. 938, 944 (Bkrtcy.E.D.Pa.1983); In re Best Pack Seafood, Inc., 21 B.R. 852, 854 (Bkrtcy.D.Me.1982); In re G.W.C. Financial & Insurance Services, Inc., 8 B.R. 122, 127, 7 B.C.D. 109 (Bkrtcy.C.D.Cal. 1981). The test of the sufficiency of an application for attorneys' fees is whether, standing alone, the application identifies, describes, and explains the services and

---

**3.** Attorney Gates points out that the Bankruptcy Court charges fifty cents a page for photocopying. This fee, which includes the clerk's time in making the copy, is promulgated by the Judicial Conference of the United States under the authority of 28 U.S.C. § 1930(b), presumably "to recoup some of the costs of the bankruptcy system," In re South, 689 F.2d 162, 9 B.C.D. 767, 769, 7 C.B.C.2d 216 (10th Cir.1982).

expenses charged to the estate intelligibly enough to enable us to evaluate their reasonableness. An application for fees should be self-contained, including enough information on its face for us to review the charges. See *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 582 (Bkrtcy.D. Utah 1985); *In the Matter of Texas Gulf Industries, Inc.,* 4 B.C.D. 186, 191, 16 C.B.C. 129, 139, n. 8 (Bkrtcy.S.D.Texas 1978).

 We recognize that preparing a fee application that complies with the guidelines set forth in this opinion may be time-consuming and oppressive. A policy of maintaining accurate, contemporaneous records and receipts, and a reliance on computers and a disciplined staff, should alleviate much of the burden. Compare *In re Seneca Oil Company,* 65 B.R. 902, 908 (Bkrtcy.W.D.Okl.1986). Because of the meticulous record-keeping requirements imposed by the Court, moreover, we believe time spent preparing an application for fees is compensable. See, *e.g., In re Nucorp Energy, Inc.,* 764 F.2d 655, 658–59 (9th Cir.1985). In setting forth these guidelines, we have tried to be sensitive to existing billing practices and to the constraints on a lawyer's time, but have been obliged to balance these considerations with our statutory responsibility to conduct an independent review before awarding attorneys' fees. Compare *In re WHET, Inc.,* 58 B.R. 278, 281–82 (Bkrtcy.D.Mass.1986). While we might take issue with Judge King's evaluation of Victorian literature, we have no quarrel with his position on fee applications:

> The Court does not require a fee application the size of a boring Victorian novel. However, in light of the fact that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors, the Court believes that a justification of such fees in the

application for compensation is not an overly burdensome task.

*In re Hotel Associates, Inc.,* 15 B.R. 487, 488 (Bkrtcy.E.D.Pa.1981).

At the most rudimentary level, our initial inquiry in reviewing a fee application is whether the arithmetic is correct. The distance from toe to top should be the same as from top to toe. Compare *In re Cuisine Magazine, Inc.,* 61 B.R. 210, 216, n. 5 (Bkrtcy.S.D.N.Y.1986) (discrepancy between billing summary and time sheets); *In re Lafayette Radio Electronics Corp.,* 16 B.R. 360, 361 (Bkrtcy.E.D.N.Y.1982) (numerical inaccuracies).

This fee application attempts to compensate through sheer bulk for what it lacks in precision. In the first interim application, the total number of hours has not been added correctly. Furthermore, even using this inaccurate total, the amount billed does not correctly reflect the hours multiplied by the hourly rate. Although the applicant has listed expenses amounting to $488.08 in 1985, he has billed $611.58 for expenses during this period. Finally, there is a discrepancy (this time, in the applicant's favor) between the total amount he has requested through March 31, 1985 and the amount he has documented for this period. Reviewing a slipshod application in which the calculations are not accurate and the bill submitted and the hours and expenses listed in the supporting documentation do not correspond is a dispiriting task.

 Assuming the figures have been correctly calculated, as here they have not, the Court will look next to whether the services are sufficiently identified and explained to enable the Court to evaluate them. In this respect also, the application before us is wanting. Numerous entries lump discrete services together within a single block of time, denying the Court information about how much time Attorney Gates spent on each service.[4] Each type of

---

**4.** Taking the supporting documentation filed November 14, 1985 as our point of reference because it represents the most recent and most complete statement of the applicant's legal services, we find that at least the following entries

have impermissibly grouped disparate services together: various activities for 16.0 hours on 5/5/84; various conferences, meetings, and reviews of records for 13.0 hours on 5/7/84; review and reply to various correspondents for

service billed, whether reviewing papers, drafting papers, organizing files, researching law, attending meetings, conferring by telephone, reading or drafting correspondence, preparing for trial, attending or conducting depositions, hearings or trials, and the like, should be separately identified for each instance. Henceforth, this Court will disallow compensation altogether for any entry that aggregates individual services. Compare *In re Seneca Oil Company*, 65 B.R. 902, 909 (Bkrtcy.W.D.Okl.1986); *In re Nation-Ruskin, Inc.*, 22 B.R. 207, 210 (Bkrtcy.E.D.Pa.1982).

To pass muster under 11 U.S.C. § 330(a), an application for fees must describe and explain each discrete activity with enough specificity to enable us to determine whether the activity was related to the bankruptcy case, whether it was duplicative, whether the time expended and the rate charged were reasonable, and in general, whether the particular activity was justified. In this respect, by and large, this application adequately presents the factual particulars, the subject matter, and the purpose. See, *e.g., Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573–74 (N.D.Ind.1984); *In the Matter of*

*Arlan's Department Stores, Inc.*, 462 F.Supp. 1255, 1269 (S.D.N.Y.1978), aff'd, 615 F.2d 925 (2d Cir.1979); *In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bkrtcy.E.D. N.Y.1986). In addition to furnishing time sheets that give the date, duration, participants, and substance of correspondence, Attorney Gates has thoughtfully furnished a chronological correspondence log reciting this information. Similarly, conferences are not compensable without an explanation of their necessity. *In re American International Airways, Inc.*, 47 B.R. 716, 724 (Bkrtcy.E.D.Pa.1985). Generally, for telephone conferences, negotiations, and meetings, the applicant has been similarly particular, though without preparing a separate log.[5] His references to legal research, on the other hand, are generally too cryptic and abridged.[6] We do not think it unduly burdensome to ask counsel to specify the topic he is researching and to relate the research to the bankruptcy proceedings. *In re Art Shirt Ltd., Inc.*, 30 B.R. 318, 319 (Bkrtcy.E.D.Pa.1983). The failure to provide enough detail to allow us to determine the nature and value of legal research forces us to conclude it is not compensable. *In re Best Pack Seafood,*

3.0 hours on 6/13/84; meeting on a host of undifferentiated issues and drafting of outline of complaint for 4.0 hours on 7/3/84; drafting and legal research for 1.8 and 2.5 hours on 7/9/84; research and drafting for 2.9 hours on 7/11/84; pre-hearing conferences, attendance at meeting of creditors, and conference with Judge Marro for 3.0 hours on 7/27/84; research and correspondence for .8 hours on 7/30/84; research and drafting answer for 2.5 hours on 8/6/84; conference and organizing materials for 2.0 hours on 8/8/84; conduct of trial and lunch meeting with attorney for 3.7 hours on 8/23/84; meeting involving various listed but undifferentiated activities for 4.9 hours on 8/30/84; review of papers and telephone conference for .3 hours on 9/14/84; review of correspondence and examination of other documents for 1.6 hours on 10/5/84; review of complaints and compiling materials for 1.6 hours on 10/15/84; legal research and review of financial records for 4.2 hours on 11/18/84; research and drafting for 1.5 hours on 1/28/85; research and initial drafting for 3.5 hours on 2/3/85; further research and drafting for 3.6 hours on 2/4/85; correspondence, research, and drafting for 4.1 hours on 2/8/85; drafting and service of answer for 3.2 hours on 2/12/85;

various meetings for 8.3 hours on 2/15/85; reviewing papers, record-keeping, and correspondence for 2.7 hours on 2/20/85; reviewing time records and correspondence for 2.5 hours on 2/28/85; legal research, drafting memorandum, correspondence, and serving memorandum for .5 hours on 3/13/85; legal research and drafting complaint for 8.3 hours on 3/27/85.

5. With, however, conspicuous exceptions. For example, the entry for a pre-petition meeting for a block of 5.5 hours on 5/4/84 does not allocate the time spent on the different subjects mentioned in applicant's Appendix A; the entry for 2.0 hours on 12/26/84 speaks incomprehensibly of "profiling" decisions; the entry for a meeting and review of records for 2.0 hours on 1/25/85 does not explain the subject matter or purpose of this meeting.

6. The application lists a total of 53.3 hours expended on legal research. Entries for the following dates, amounting to 23.0 hours, strike us as insufficiently detailed: 4/27/84, 4/30/84, 5/1/84, 7/10/84, 8/6/84, 2/7/85, 2/8/85, 3/27/85.

*Inc.*, 21 B.R. 852, 854, 9 B.C.D. 389 (Bkrtcy. D.Me.1982).

▮ Having excluded those items of service lumped together or insufficiently described, the Court must then determine which of the remaining services may be allowed. The threshold question then is whether a particular service billed for is compensable. Certain activities by debtor's counsel are inherently not compensable because not legal services; others are not compensable under the specific circumstances of the case because not performed for the benefit of the estate. Activities that are not compensable should be deleted from the attorney's records. *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 362 (Bkrtcy.E.D.N.Y.1982).

This applicant, an out-of-state attorney, has billed the debtor's estate for 108.9 hours of time spent in transit, representing almost one-sixth of his total time, at his full hourly rate of $90.00. In addition, he has claimed the expenses of this traveling, including the expense of flying by private airplane from Albany, New York, to Vermont. Only a small fraction of this time in traveling involved legal work en route.[7]

Some Courts have held that travel time is inherently not compensable. *In re Givliano Verna, Inc.*, 23 C.B.C. 360, 370 (E.D. Pa.1980); *In re Seneca Oil Company*, 65 B.R. 902, 909 (Bkrtcy.W.D.Okl.1986); *In re Pacific Express, Inc.*, 56 B.R. 859, 865, 14 C.B.C.2d 157 (Bkrtcy.E.D.Cal.1985); *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 361 (Bkrtcy.E.D.N.Y.1982). Compare *In re Perros*, 14 B.R. 515, 518 (Bkrtcy. E.D.N.Y.1981) (paralegal's travel time disallowed). Others, including this one, have reduced the fees for travel time. *In re International Coins & Currency, Inc.*, 22 B.R. 127, 130 (Bkrtcy.D.Vt.1982); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 582 (Bkrtcy.D.Utah 1985); *In re United Rockwool, Inc.*, 32 B.R. 558, 561 (Bkrtcy.E. D.Va.1983). See Vermont Local Bankrupt-

cy Rule 13. (Time spent for local travel, defined as less than one hour, may not be billed to the estate.)[8]

▮ While we recognize the reality that a lawyer's time is the lawyer's stock in trade; we believe that local travel time is an overhead expense built into a lawyer's hourly rate. Time spent in excess of this parameter must be compensated. To hold otherwise is to penalize unjustly the bankruptcy practitioner. We now hold that time spent traveling to or from a single location exceeding one hour or longer may be compensated at one-half the attorney's or other professional's hourly rate. Compare *In re Taylor*, 66 B.R. 390, 397 (Bkrtcy.W.D.Pa.1986) (payment of a fifty percent rate for travel time is more than charitable); *In re Watson Seafood & Poultry Company, Inc.*, 40 B.R. 436, 443 (Bkrtcy.E.D.N.C.1984) (travel time compensated at one-half hourly rate). Of course, time reasonably spent performing appropriate work on the case while traveling should be fully compensated. To claim this exception, the fee application must clearly show that work was performed while traveling. Compare *In re Global International Airways Corp.*, 38 B.R. 440, 445 (Bkrtcy.W.D. Mo.1984) (hourly rate for travel time reduced, though credit granted for work performed in transit). Ordinarily, when an out-of-state attorney or firm lays no claim to any special expertise required by the debtor, and competent local bankruptcy counsel is available, the added travel time is not justified and should be considered an overhead expense voluntarily incurred by the firm to obtain out-of-state business. See *In the Matter of Combined Croft Corp.*, 58 B.R. 819, 822 (Bkrtcy.W.D.Wis. 1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 427, n. 1, 443 (Bkrtcy.D.Ark.1984). We shall not apply this principle here, however, because the attorney's office is in Albany, New York, a distance only some

---

**7.** Altogether, some unspecified portion of 3.6 hours of travel on 5/14/84 was devoted to drafting and conferences, and of 2.5 hours on 5/16/84 to conferences.

**8.** In keeping with this rule, Attorney Gates has not requested compensation for travel time shorter than one hour.

two hours from this Court, no farther than a number of towns within the State.

 Time expended researching or analyzing abstract legal issues is inherently not compensable. *In re Holthoff,* 55 B.R. 36, 42 (Bkrtcy.E.D.Ark.1985); *In re Erewhon, Inc.,* 21 B.R. 79, 83, 9 B.C.D. 288 (Bkrtcy.D.Mass.1982). The estate should not be compelled to pay for counsel's private continuing education. *In the Matter of Nor-Les Sales, Inc.,* 32 B.R. 900, 903 (Bkrtcy.E.D.Mich.1983), modified on appeal sub nom. *Stark & Reagan, P.C. v. Nor-Les Sales,* 53 B.R. 442 (E.D.Mich.1984). In particular, we will disallow time spent "getting acquainted" with the Code. See *In re United Rockwool, Inc.,* 32 B.R. 558, 561 (Bkrtcy.E.D.Va.1983); *In re St. Pierre,* 4 B.R. 184, 186, 6 B.C.D. 607, 2 C.B.C. 264 (Bkrtcy.D.R.I.1980). Since a certain standard of competence must be presumed, general research on law well known to bankruptcy practitioners should not be charged to the estate. *In re Wittman Engineering & Manufacturing Company, Inc.,* 66 B.R. 488, 490 (Bkrtcy.N.D.Ill.1986); *In re Seneca Oil Company,* 65 B.R. 902, 909 (Bkrtcy.W.D.Okl.1986). We would exclude from this application 13.1 hours devoted to abstract or general legal research.[9]

 Time devoted to strictly administrative activities such as mailing or delivering papers, photocopying, word processing, organizing files, and tracking inventory must not be compensated from the debtor's estate. See, *e.g., In re Holthoff,* 55 B.R. 36, 42 (Bkrtcy.E.D.Ark.1985) (fees for "file organization" should not be allowed as compensable time); *In the Matter of Union Cartage Company,* 56 B.R. 174, 178 (Bkrtcy.N.D.Ohio 1986) (lower rates for routine filing of documents); *In re Banks,*

31 B.R. 173, 178 (Bkrtcy.N.D.Ala.1982); *In re Cipriano,* 8 B.R. 697, 699 (Bkrtcy.D.R.I. 1981) (attorney's fees for executing and filing proof of claim are not recoverable). In this case, counsel consumed 23.1 hours (charging $2,079.00) in such activities, time he should not be compensated for.[10] Duties appropriate for the non-legal staff are part of an attorney's overhead expenses and must not be billed to the estate at the attorney's hourly rate as legal services. Bankruptcy courts are not at liberty to engage in "vicarious generosity." See *In re Owl Drug Company,* 16 F.Supp. 139, 142 (D.Nev.1936), aff'd sub nom. *Cohn v. Edler,* 90 F.2d 823 (9th Cir.1937).

A second-order category of service subject to some uncertainty is the time expended in preparing the application for legal fees, a question not definitively resolved in this jurisdiction. A minority of courts disallow compensation for activities in connection with the application because such activities do not further the interests of the estate but only of its counsel. See *In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 348–50 (Bkrtcy.E.D.Pa.1986); *In the Matter of Mansfield Tire & Rubber Company,* 65 B.R. 446, 458 (Bkrtcy.N.D.Ohio 1986); *In re American Metals Corporation,* 49 B.R. 579, 580–81 (Bkrtcy.D.Kan. 1985); *In the Matter of Seatrain Lines, Inc.,* 21 B.R. 194, 195 (Bkrtcy.S.D.N.Y. 1982). The Courts of Appeals that have squarely addressed the issue, however, have uniformly approved payment for preparing fee applications. *Coulter v. State of Tennessee,* 805 F.2d 146, 151 (6th Cir. 1986); *In re Nucorp Energy, Inc.,* 764 F.2d 655, 662 (9th Cir.1985); *Ross Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1092–93 (5th Cir.1980). Compare *Danny Kresky Enterprises Corporation v. Magid,* 716 F.2d 215, 219 (3d Cir.1983) (anti-

---

**9.** On 4/27/84 Attorney Gates spent 4.8 hours on pre-petition research of voluntary and involuntary corporate reorganizations; on 11/18/84 he spent 4.2 hours examining the liability for fraud of officers and directors; and on 2/8/85 he researched "trustee duties" for 4.1 hours.

**10.** Attorney Gates has billed the estate at $90.00 an hour for .5 hours spent mailing forms on 5/15/84; for 3.6 hours organizing lists, files, and records on 5/22/84, 5/26/84, and 8/3/84; for 17 hours (including 4 hours of travel time) supervising the movement of inventory, taking inventory, dictating a list, and delivering inventory on 5/25/84, 5/26/84, 8/31/84, and 10/3/84; and for 2 hours traveling to file a notice of claim on 11/21/84.

trust action). We are persuaded that it would be "unduly penurious" and fundamentally inequitable to require the detailed accounting we have set forth here without also granting reasonable compensation for the time expended to comply. See *Ross Pass Mines*, 615 F.2d at 1093.

Certain Courts that have allowed compensation for the time spent on a fee application have required that the time be billed at a lower rate than time for "truly legal services." See, *e.g.*, *In the Matter of Union Cartage Company*, 56 B.R. 174, 178 (Bkrtcy.N.D.Ohio 1986); *In re United Rockwool, Inc.*, 32 B.R. 558, 561 (Bkrtcy.E.D.Va.1983) (citing *In re International Coins & Currency*, 22 B.R. at 131). As we discuss later in this opinion, we do not think it appropriate or workable to set a variable hourly rate for each type of service rendered by the applicant. On the other hand, activities in connection with a fee application that should be performed by administrative rather than legal staff must not be billed by the hour at an attorney's rates. Compare *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 217 (Bkrtcy.S.D.N.Y. 1986) (time spent reviewing billings should not be compensated out of estate funds); *In re Holthoff*, 55 B.R. 36, 42 (Bkrtcy.E.D. Ark.1985) (letters, conferences, agreements, and telephone calls about fees are not compensable); *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 361 (Bkrtcy.E.D.N.Y.1982) (correspondence about fee application is not compensable). Counsel's secretary may be entrusted with the task of compiling the data from contemporaneous time slips, making any necessary inquiries, and organizing and typing the materials to support the fee application.

Counsel may be compensated for reviewing the application, drafting any narrative material, or successfully defending the fees. See *In the Matter of Union Cartage Company*, 56 B.R. 174, 178 (Bkrtcy.N.D.Ohio 1986). Compare *In re Four Star Terminals, Inc.*, 42 B.R. 419, 436–37 (Bkrtcy.D. Ark.1984); *In re Erewhon, Inc.*, 21 B.R. 79, 90 (Bkrtcy.D.Mass.1982) (counsel will not be compensated for additional time expended in defending excessive fees). Moreover, the total time spent on the application must be reasonable. See *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir.1986) (generally limiting compensable hours to three per cent of total hours when application submitted on papers and five per cent when litigated); *Ross Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1093 (5th Cir.1980) (remanded to bankruptcy court to reduce excessive hours spent compiling application). While we are loathe to set down an acceptable percentage of billed time that may be devoted to a fee application, we shall not hesitate in cutting excessive hours.[11] We shall also not allow billed time for defending applications that do not adhere to guidelines laid down in this Opinion.

Although not categorically prohibited, certain services may not be compensable under the circumstances of a particular case. Work by counsel for the debtor must further the interests of creditors. *In re International Coins & Currency, Inc.*, 23 B.R. 814, 816 (Bkrtcy.D.Vt.1982) (*I.C.C.* II); *In re International Coins & Currency, Inc.*, 22 B.R. 127, 130 (Bkrtcy.D. Vt.1982) (*I.C.C.* I). The threshold criterion of compensability is the benefit to the estate. See, *e.g.*, *In the Matter of Tabala*, 48

---

11. By our conservative count, this applicant spent 15 hours through 3/29/85 on his legal fees, including 2.2 hours on preparing materials for the application on 7/9/84 and 2/1/85; 6 hours on a conference and review of the records on 2/6/85, 2/7/85, and 2/28/85; 4.4 hours on "work on updating" time and expense records on 3/18/85; and 2.4 hours on legal research. Although not disproportionate in relation to the total of 671.6 hours of legal services submitted, the time is inordinate for the listed tasks in an interim application. Without further justification, we are inclined to cut these hours by half.

Attorney Gates has asked the Court for authorization to submit a request for additional fees for his services and expenses since 3/29/85 in preparing and defending his application for fees. Statement Supporting Second Application for Interim Compensation at 47. Since we are granting him the opportunity to submit a final application consistent with the principles set out in this opinion, we shall address any such request when we review his final application.

B.R. 871, 873 (S.D.N.Y.1985); *In re Taylor,* 66 B.R. 390, 395 (Bkrtcy.W.D.Pa.1986); *In the Matter of Hunt,* 59 B.R. 842, 843 (Bkrtcy.N.D.Ohio 1986); *In re Kaplan,* 59 B.R. 112, 113 (Bkrtcy.D.R.I.1986); *In re Kirlan,* 55 B.R. 105, 106 (Bkrtcy.S.D.Fla. 1985); *In re Ezell,* 45 B.R. 13, 14 (Bkrtcy. M.D.Tenn.1984); *In re Garnas,* 40 B.R. 140, 141–42 (Bkrtcy.D.N.D.1984). Time spent calling in to the office for messages or meeting to discuss who should represent whom or traveling to confer with the client or others when a letter or telephone call would have sufficed does not benefit creditors. Compare *In re Four Star Terminals, Inc.,* 42 B.R. 419, 437–38 (Bkrtcy.D. Ark.1984) (unlike negotiations, meetings do not necessarily require an attorney's presence).[12]

In light of this principle, but without identifying the objectionable entries, counsel for the unsecured creditors' committee objected to the amount of pre-petition time billed to the estate and to duplication in Attorney Gates' application. The Court encourages attorneys who challenge fee applications to indicate the specific hours that seem unreasonable rather than expounding conclusory statements that an applicant is seeking too much compensation. See *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 585 (Bkrtcy.D.Utah 1985). Discovery is available for this purpose. Compare *Stolkin v. Nachman,* 472 F.2d 222, 228 (7th Cir.1973). Nevertheless, we must endeavor to fulfill our independent obligation to review the application. See *In re International Coins & Currency, Inc.,* 26 B.R. 256, 260 (Bkrtcy.D.Vt.1982) (*I.C.C.* III).

Under 11 U.S.C. § 329, the debtor's attorney may be compensated for the reasonable value of pre-petition legal services "rendered in contemplation of or in connection with the case." The purpose of this statutory restriction is to safeguard against the "serious potential for overreaching by the debtor's attorney." S.Rep. No. 989, 95th Congress, 2nd Session 39, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5825. In order for services to be "in contemplation of" bankruptcy, the services must be influenced by and be a direct result of the debtor's imminent filing of a petition in bankruptcy. *In the Matter of Swartout,* 20 B.R. 102, 106 (Bkrtcy.S.D. Ohio 1982). We agree with the Court in *In re Four Star Terminals, Inc.,* 42 B.R. 419, 434 (Bkrtcy.D.Ark.1984), that "as a matter of policy the pre-petition fees of the debtor's attorney should be limited to advising the client whether to file and to preparing the petition and the accompanying documents, absent a clear showing of exceptional circumstances." Here, Attorney Gates has submitted an application requesting compensation for 220 hours of pre-petition services, almost one-third of the entire bill for 671.6 hours. The pre-petition charges are patently excessive.[13] See *In re Sutherland,* 14 B.R. 55, 57–58, 4 C.B.C.2d 1580 (Bkrtcy.D.Vt.1981) (reducing hours not necessary in contemplation of bankruptcy); *In re Four Star Terminals,* 42 B.R. at 434 (same).

As the applicant himself has observed, our predecessor, Judge Charles Marro, warned both the applicant and co-counsel against duplicating services when the Court originally approved their serving

---

12. Without combing through the application here, we have in mind such entries as the 15.3 hours traveling and meeting to discuss representation on 6/4/84 and 2/15/85, the 6 hours of meetings with Mr. Wilkerson on 6/7/84 and Mrs. Noyes on 1/11/85, and the .2 hours billed for calling into the office.

13. Without subjecting each individual item to scrutiny, and excluding hours that are objectionable on other grounds, we nevertheless note that entries for "cancelling [an] appearance at a litigation conference" (4/24/84), for calls to gather support for a new president of the debtor

(5/12/84), for travel and a meeting to elect the president and define responsibilities (5/18/84), and for a meeting to inspect a vault and negotiate insurance coverage (5/23/84) are not compensable from the estate under the most indulgent standards. Moreover, the necessity of generally mastering the facts of a complex company and negotiating with creditors threatening involuntary bankruptcy as general counsel cannot justify the expenditure of 220 hours charged to the estate. See Statement Supporting Second Application for Interim Compensation, 16–18.

together as debtor's attorneys. Statement Supporting Second Application for Interim Compensation, 22. More than one attorney or firm may be compensated for representing a debtor only if such joint representation does not increase the cost to the estate. The Court will not permit .double compensation for the same services. See, *e.g., In re AOV Industries, Inc.,* 797 F.2d 1004, 1008 (D.C.Cir.1986); *In re International Coins & Currency, Inc.,* 22 B.R. 127, 130 (Bkrtcy.D.Vt.1982); *In re Pacific Express, Inc.,* 56 B.R. 859, 866 (Bkrtcy.E.D.Cal.1985); *In re Yankee Seafood Corporation,* 53 B.R. 285, 286 (Bkrtcy.D.R.I. 1985); *In re General Oil Distributors, Inc.,* 51 B.R. 794, 802 (Bkrtcy.E.D.N.Y. 1985); *In re Jansen,* 47 B.R. 641, 643 (Bkrtcy.D.Ariz.1985); *In re Sapolin Paints, Inc.,* 38 B.R. 807, 814–15 (Bkrtcy.E.D.N.Y.1984); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705, 710 (Bkrtcy.W.D.Ky.1982). The fact that the applicant was privy to activities being performed by other counsel does not warrant compensation. *In re Kornstein's, Inc.,* 56 B.R. 481, 486 (Bkrtcy.D.R.I.1985).[14] The applicant's argument that such conferences are needed precisely to avoid duplication is disingenuous.[15] Compare *New York State Association for Retarded Children, Inc. v. Carey,* 544 F.Supp. 330, 339 (E.D.N.Y.1982), rev'd on other grounds, 711 F.2d 1136, 1146 (2d Cir.1983) (court may decline to compensate hours spent by collaborating lawyers).

This Court recognizes that "[t]here is a point beyond which it is neither possible nor profitable to assess the quality of a counsel's time." *Boston and Maine Corporation v. Moore,* 776 F.2d 2, 9 (1st Cir. 1985). Consequently, we shall not engage in the perilously subjective enterprise of "the grading in of a 'quality' factor in

determining an hourly rate on a task by task basis." *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 756, n. 22 (Bkrtcy. 1st Cir. 1982). Assigning a variable hourly rate for various activities approaches the problem of unreasonable fees from the wrong direction. Unfortunately, many courts have taken the position that routine, ministerial services should not be compensated at the same rate as truly legal services, a position to which this Court in the past subscribed. See, *e.g., In re International Coins & Currency, Inc.,* 26 B.R. 256, 262 (Bkrtcy.D. Vt.1982), but recently has seen fit to ·change; See *In re Tavern Motor Inn, Inc.,* 69 B.R. 138, 143, January 8, 1987. (To make the blanket assertion that all ministerial work is not compensable at a fair hourly rate is to underestimate the job of the bankruptcy practitioner). See also, *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.,* 44 B.R. 570, 573 (N.D.Ind.1984); *In re Doyle-Lunstra Sales Corporation,* 19 B.R. 1003, 1007 (D.S.D.1982); *In re Esar Ventures,* 62 B.R. 204, 205 (Bkrtcy.D.Hawaii 1986); *In re Jansen,* 47 B.R. 641, 643 (Bkrtcy.D.Ariz.1985); *In the Matter of Ferkauf, Inc.,* 42 B.R. 852, 858 (Bkrtcy.S.D.N.Y.1984); *In the Matter of Minton Group, Inc.,* 33 B.R. 38, 41 (Bkrtcy.S.D.N.Y.1983); *In re United Rockwool, Inc.,* 32 B.R. 558, 561 (Bkrtcy.E.D.Va.1983); *In the Matter of Dee's Resort Wear, Inc.,* 25 B.R. 591, 592 (Bkrtcy.M.D.Fla.1982); *In the Matter of the Liberal Market, Inc.,* 24 B.R. 653, 659, 9 B.C.D. 1216 (Bkrtcy.S.D.Ohio 1982); *In re Hotel Associates, Inc.,* 15 B.R. 487, 488 (Bkrtcy.E.D.Pa.1981); *In the Matter of Hamilton Hardware Company, Inc.,* 11 B.R. 326, 331 (Bkrtcy.E.D.Mich.1981). Courts have specifically identified such potentially beneficial activities as telephone conferences, correspondence, and cite-checking in connection with the bankruptcy

---

**14.** The Court in *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 777 (Bkrtcy.E.D.Pa. 1984), disallows compensation for conferences between attorneys jointly representing the debtor only if the consultation lasted longer than one hour. In our judgment this rule of thumb is arbitrary and results in an unnecessary additional burden on the estate.

**15.** Unless specifically justified with these strictures in mind, the following hours should be deleted from the attorney Gates's final application: .6 on 6/4/84, .1 on 7/12/84, .1 on 7/13/84, .4 on 9/17/84, 6.0 on 11/19/84, .2 on 1/17/85, 1.7 on 1/28/85, .16 on 2/21/85, .5 on 2/28/85, .4 on 3/27/85, and .9 on 3/28/85.

case as tasks for which counsel's compensation should be reduced. See *In re Jansen*, 47 B.R. at 643; *Matter of Ferkauf*, 42 B.R. at 858; *In re Hotel Associates*, 15 B.R. at 488. This Court is disposed to agree with the Court in *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 585 (Bkrtcy. D.Utah 1985), which notes that the distinction between ministerial services such as telephone calls, letters, and meetings, and "truly legal services" involving litigation, negotiation, research, and drafting, discourages counsel from resolving issues informally to avoid costly litigation.

 The problem lies not in a failure to graduate hourly rates or distinguish categories of service, but in the prodigal allocation of resources within a firm or law office. Professionals should be compensated in accordance with their level of expertise. Critical to complying with the requirement of 11 U.S.C. § 330(a) that the compensation for actual and necessary professional services be reasonable is ensuring that the services billed correspond to the provider's presumed level of expertise. A Michelangelo charging Sistine Chapel rates should not be painting a farmer's barn. Compare *In re Lock Shoppe, Inc.*, 67 B.R. 74, 75, n. 3 (Bkrtcy.E.D.Pa.1986). Senior counsel has an obligation to delegate those tasks that require less expertise to junior associates or paralegals. See *In re Malden Mills, Inc.*, 42 B.R. 476, 481, 12 B.C.D. 324 (Bkrtcy.D.Mass.1984). The Code specifically recognizes that paraprofessionals employed by attorneys are entitled to reasonable compensation. 11 U.S.C. § 330(a)(1). This Court encourages the use of paralegals and law clerks to perform tasks within the scope of their skill. Com-

pare *In re Erewhon, Inc.*, 21 B.R. 79, 90 (Bkrtcy.D.Mass.1982).[16] Time spent by paralegals and other paraprofessionals is compensable from the estate, and such compensation is subject to the same scrutiny as that of the attorney in the case. *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 884–85 (Bkrtcy.W.D.Pa.1986).

 Once we have excluded the hours in an application that are insufficiently described or are lumped together and the hours for services that are not compensable categorically or in the particular case, we must establish an hourly rate for each professional providing services. We may then proceed to establish the lodestar figure by multiplying the one by the other. The United States Supreme Court instructs us that the most useful approach to determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, —, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 456 (1986); *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). There is "[a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council*, — U.S. —, —, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 456 (1986).

 It is for the Court to determine a reasonable hourly rate. *In re Shaffer-Gordon Associates, Inc.*, 68 B.R. 344, 351 (Bkrtcy.E.D.Pa.1986). In arriving at applicant's hourly rate, we must look to "the

---

**16.** Attorney Gates indicates that until September 1, 1985 he had a law clerk in his office. Statement Supporting Second Application for Interim Compensation, 11–12, 22. Yet, inexplicably, this applicant failed to assign any of the numerous activities appropriate for a law clerk to this person and elected instead to perform the tasks himself. In the future, in such circumstances, if the firm or law office has the personnel, this Court will reduce the rate of an attorney performing tasks appropriate to the paralegal or law clerk to the para-professional's rate. Sim-

ilarly, we will reduce a partner's rate to an associate's if the work for which the partner is billing falls within the scope of an associate's presumed expertise. Compare *In re W.T. Grant*, 12 C.B.C. 694, 695 (S.D.N.Y.1977); *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. 122, 127 (Bkrtcy.C.D.Cal.1981). But see *In re Seneca Oil Company*, 65 B.R. 902, 911 (Bkrtcy.W.D.Okl. 1986) (preferring a blended rate that leaves decisions about allocating personnel to the law firm).

cost of comparable services." 11 U.S.C. § 330(a)(1). The Court of Appeals in this Circuit has not had an opportunity to interpret this criterion for setting fees in bankruptcy.[17] This Court has for some time regarded "comparable services" as the cost in the community or district where the services were rendered. *In re International Coins & Currency, Inc.,* 22 B.R. 127, 131 (Bkrtcy.D.Vt.1982); *In re Sutherland,* 14 B.R. 55, 58, (Bkrtcy.D.Vt.1981). The phrase "cost of comparable services" does not mean the usual hourly billing rate of the applicant but means the fee customarily charged outside bankruptcy in the local community by someone who possesses similar skill, experience, expertise, stature, and reputation. *In re Shades of Beauty, Inc.,* 56 B.R. 946, 951 (Bkrtcy.E.D.N.Y.1986); *In re City Planners & Developers, Inc.,* 5 B.R. 217, 219 (Bkrtcy.D.P.R.1980). The justification for applying local rates has its source in an obligation to reduce the burden on creditors by obtaining local counsel when competent local counsel is available. *In the Matter of Multiponics,* 622 F.2d 731, 734 (5th Cir.1980); *In re Nova Real Estate Investment Trust,* 25 B.R. 252, 254–55 (Bkrtcy.E.D.Va.1982); *In the Matter of R.C. Sanders Technology Systems, Inc.,* 21 B.R. 40, 43 (Bkrtcy.D.N.H.1982). We also think there is a strong economic justific for applying local rates in many cases. The estate arises in many cases within a local economy. The fixed costs and overhead factors, not the variable, are determined locally. Legal fees and other professional costs are generally considered as overhead. Accordingly, local rates should apply. We do not decide today what rates should apply when the estate is located in Vermont and other states. And of course, in a complex case of national scope, rates for nationally prominent, out-of-state counsel may apply. See *In re Seneca Oil Company,* 65 B.R. 902, 911 (Bkrtcy.W.D.Okl. 1986); *In re Jensen-Farley Pictures, Inc.,*

47 B.R. 557, 578–79 (Bkrtcy.D.Utah 1985); *In the Matter of Baldwin United Corporation,* 36 B.R. 401, 403 (Bkrtcy.S.D.Ohio 1984); *In re Wilson Foods Corporation,* 36 B.R. 317, 321 (Bkrtcy.W.D.Okla.1984); *In re Atlas Automation, Inc.,* 27 B.R. 820, 822–23, 10 B.C.D. 118 (Bkrtcy.E.D.Mich. 1983).

■■■ This case, though protracted and involving a large number of creditors, was not so extremely complex as to exceed the competence of a number of local attorneys. Indeed, local counsel, acting first as co-counsel, then lead counsel, appeared for the debtor throughout. Attorney Gates is a sole practitioner with little experience in bankruptcy, having handled only one case before representing this debtor.[18] Although Attorney Gates was originally retained and continued because of his reputed competence as a trial attorney, we observe that of 671.6 hours he billed for this case in the second interim application, fewer than 5.7 hours were devoted to litigation (the Erdman trial on 8/23/84 and the Purcell trial on 2/27/85). Based on our acquaintance with this legal community and our review of applications for attorneys' fees since our tenure as United States Bankruptcy Judge for Vermont, we find, and have found in other fee application proceedings, that the prevailing rate for legal services for a sole practitioner of the applicant's experience and standing during the time period of this application is $60.00 an hour. Compare *In re Shafer,* 63 B.R. 194, 199 (Bkrtcy.D.Kan.1986) (approving rate of $75.00 an hour for a Chapter 13 case in Topeka, Kansas). Thus, the applicant's compensation for his legal services to the debtor will be determined by multiplying this hourly rate by the number of hours remaining after the principles set out in this opinion are applied in his final application for fees.

■■■ Finally, the applicant has asked for an upward adjustment of this lodestar

---

**17.** See *In re Stable Mews Associates,* 778 F.2d 121, 124, n. 4 (2d Cir.1985) (resisting the temptation to apply the new "cost of comparable services" criterion to the determination of attorneys' fees in bankruptcy because interlocutory

order granting compensation was not appealable).

**18.** See Statement Supporting Second Application for Interim Compensation, 18–19.

figure. We have not seen such rare and exceptional results on account of the applicant's efforts in this case as would warrant increasing the fees awarded. As the Supreme Court has recently pointed out:

> In short, the lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, ——, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 456 (1986). Because the result obtained generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award. *Blum v. Stenson,* 465 U.S. 886, 900, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). Success, after all, is the result contemplated by Congress in enacting Chapter 11 of the Bankruptcy Code. We expect bankruptcy counsel in this District to charge a fair hourly rate for professional services rendered. Compare *In the Matter of Union Cartage,* 56 B.R. 174, 178 (Bkrtcy.N.D. Ohio 1986). Similarly, neither complexity nor novelty of the issues is an appropriate factor in determining whether to increase the basic fee award. *Blum v. Stenson,* 465 U.S. at 898–99, 104 S.Ct. at 1548–49.

Under 11 U.S.C. § 330(a)(2), counsel may claim reimbursement for actual and necessary expenses. The Court will allow the applicant reimbursement for the *actual* cost of photocopying, not to exceed twenty cents a page. Compare *Seneca Oil Company,* 65 B.R. at 913; *In re Trak Microcomputer Corp.,* 58 B.R. 708, 713–14 (Bkrtcy.N.D.Ill.1986); *In the Matter of Union Cartage,* 56 B.R. 174, 178 (Bkrtcy.N.D. Ohio 1986). Attorney Gates has properly charged the estate for internal photocopies at ten cents a page. Compare *In re Island Helicopter Corporation,* 53 B.R. 71, 73 (Bkrtcy.E.D.N.Y.1985) (in-house photocopying expenses allowed at the rate of ten cents a copy); *In re Rego Crescent Corporation,* 37 B.R. 1000, 1009 (Bkrtcy.E.D.N. Y.1984) (in-house photocopying at ten cents a page). Long-distance telephone charges and extraordinary postal expenses, if supported as they are in this case by receipts, and if justified for the benefit of the estate, may be reimbursed. Similarly, if travel is necessary, transportation by car in excess of one hour round-trip may be reimbursed at 20.5 cents a mile. Attorney Gates's expenses for traveling by private airplane from upstate New York to Vermont will not be allowed. Only those travel expenses that local counsel would have incurred had local counsel been employed may be recovered by debtor's out-of-state counsel. *In re Pacific Express, Inc.,* 56 B.R. 859, 866 (Bkrtcy.E.D.Cal.1985). The cost of meals is not recoverable from the estate. *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 778 (Bkrtcy.E.D.Pa.1984); *In re Sapolin Paints, Inc.,* 38 B.R. 807, 813 (Bkrtcy.E.D.N.Y.1984). Nor the cost of local taxicabs, *In re Coconut Grove Bayshore, Inc.,* 33 B.R. 194, 195 (Bkrtcy.S.D. Fla.1983), but the cost of parking and tolls is allowed. Moreover, each item of expense, even if not in a prohibited class, must be specifically justified as necessary. Compare *In re American International Airways, Inc.,* 47 B.R. 716, 725 (Bkrtcy.E. D.Pa.1985). In each instance, the applicant must show that no less expensive alternative was reasonably available.

An attorney's overhead will categorically not be reimbursed. Overhead expenses are those incurred day to day by a law office regardless of whom it represents. By contrast, out-of-pocket, variable costs are additional expenses attributable to a particular client. *In re Island Helicopter Corporation,* 53 B.R. 71, 72–73 (Bkrtcy.E.D.N.Y.1985); *In re Thacker,* 48 B.R. 161, 164 (Bkrtcy.N.D.Ill.1985). Overhead expenses typically include rent, insurance, taxes, utilities, secretarial and clerical pay, library, computer costs, office supplies, local postage and telephone charges, meals, and local travel. This list is not intended to be exclusive. This applicant has apparently not billed for any overhead expenses.

Lastly, Attorney Gates has asked for interest on his compensation for servic-

es and expenses. Statement on Second Application for Interim Compensation, 12. We think interest is not a suitable component of an award to debtor of attorney's fees. *In re White Motor Credit Corporation*, 50 B.R. 885, 890 (Bkrtcy.N.D.Ohio 1985). The case cited by the applicant in support of his request for interest, *In re American Metals Corporation*, 31 B.R. 229, 237 (Bkrtcy.D.Kan.1983), is wildly inapposite and concerns interest for an oversecured creditor under 11 U.S.C. § 506(b).

Attorney Gates has recently submitted a third compensation request. We have reviewed his application and find that it does not conform with the foregoing guidelines. Accordingly,

It is ORDERED that the applicant's compensation requests are DENIED, and it is FURTHER ORDERED that Attorney Gates be and is permitted to submit a consolidated Final Application with such additional documentation, and supporting materials, as he deems appropriate.